## SCHWARTZ v SECRETARY OF STATE

1. CONSTITUTIONAL LAW—INTERPRETATION—COMMON UNDERSTANDING —CIRCUMSTANCES OF ADOPTION—PURPOSE.

   The rules of constitutional interpretation set out in a decision of the Supreme Court require the Court to (1) ascertain the "common understanding" of the public who adopted the measure and (2) "consider the circumstances surrounding the adoption" and the "purpose sought to be accomplished".

2. CONSTITUTIONAL LAW—COURTS—GOVERNOR—ELECTIONS—JUDGES.

   The language of the Michigan Constitution which provides that "[a] vacancy shall occur in the office of judge of any court of record or in the district court by death, removal, resignation or vacating the office, and such vacancy shall be filled by appointment by the governor" and that "[w]henever a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law" makes it abundantly clear that the people intended to rectify the mistake of the 1963 Constitution in its original form of having removed the historic constitutional authority of the Governor to appoint persons to fill judicial vacancies and that the people on the other hand intended to reserve to themselves the power to fill newly created judgeships by election "as provided by law" (Const 1963, art 6, § 23).

3. JUDGES—GOVERNOR—LEGISLATURE—ELECTIONS.

   The Governor has the power to replace a judge who for some reason has left office, but the Legislature should provide by law for election to fill newly created judgeships.

4. CONSTITUTIONAL LAW—STATUTES—COURTS.

   The Legislature did not overstep the boundaries of the Michigan Constitution when it transformed five Oakland County munici-

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 5] 16 Am Jur 2d, Constitutional Law §§ 58, 59.
[2, 3] 46 Am Jur 2d, Judges §§ 237–240.
[4] 16 Am Jur 2d, Constitutional Law §§ 218, 239.
[6] 52 Am Jur 2d, Mandamus § 1 *et seq.*

pal courts with five judges into two district courts with three judges (Const 1963, art 6, § 23; 1974 PA 145).

5. CONSTITUTIONAL LAW—CONSTRUCTION.

The Supreme Court follows the rule of constitutional construction that wherever possible an interpretation that does not create constitutional invalidity is preferred to one that does.

6. MANDAMUS—DISCRETIONARY WRIT.

Mandamus is not issued as a matter of right but is a discretionary writ.

Jurisdiction taken by Supreme Court of original action for mandamus in the Court of Appeals. Submitted October 11, 1974. (No. 19 October Term 1974, Docket No. 56,260.) Decided October 30, 1974.

Original action in the Court of Appeals by Ralph C. Schwartz against the Secretary of State and the Oakland County Clerk for a writ of mandamus to compel defendants to provide upon the ballot for the election of a district judge in the City of Berkley. The Supreme Court took jurisdiction pursuant to GCR 1963, 816.2(2)(a). The municipal judge of the City of Berkley, the municipal judge of the City of Oak Park, and the associate municipal judge of the City of Oak Park intervened as defendants. Writ denied.

*Ralph C. Schwartz*, in propria persona.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, and *Varda N. Fink*, Assistant Attorney General, for defendant Secretary of State.

*Robert P. Allen*, Oakland County Civil Counsel, for defendant Oakland County Clerk.

*Campbell, Lee, Kurzman & Leitman*, for intervening defendants.

WILLIAMS, J. This case involves a petition for a discretionary writ of mandamus. It presents a double challenge of awesome proportion. First, it is a case of first impression requiring construction of the constitution without significant precedential guidance. Second, a legislative deadline requires a final definitive judicial decision in this Court not less than 90 days from the original filing of the case in the Court of Appeals and within a few days of oral arguments in this Court.[1]

## I. FACTS.

On June 7 of this year by 1974 PA 145; MCLA 600.9934; MSA 27A.9934, the Legislature transformed five Oakland County Municipal Courts with five judges into two district courts with three judges. On July 24, 1974 an interested resident and elector of Berkley, one of the municipalities affected by the transformation, sought an original writ of mandamus to compel the Secretary of State and the county clerk to hold an election for the judgeship in one of the new districts, 45a, the district which is wholly contained in Berkley, at the November general election instead of carrying over the current Berkley municipal judge.[2] Plain-

[1] In light of the urgent nature and unique character of this action we must restrict our discussion to those issues absolutely essential to the resolution of this matter and forgo discussion of other issues raised by the parties which under different circumstances we might have deemed proper questions for our consideration.

[2] That portion of 1974 PA 145 which pertains to the carrying over of the Berkley municipal judge to fill the 45a district, MCLA 600.9934(2); MSA 27A.9934(2) reads as follows:
"Effective January 1, 1975, the elected incumbent attorney municipal judge of the city of Berkley shall become the judge of the district court within the forty-fifth-a district and shall serve as a district judge until 12 noon of January 1 of the odd numbered year next following the date on which his term as municipal judge would normally have expired. In seeking election to the district court after January 1, 1975, the municipal judge becoming a judge of the district

tiff based his complaint on Const 1963, art 6, § 23, as amended, which pertinently reads:

"Whenever a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law."

It was August 27 before the county clerk, the Secretary of State and the intervening three judges filed responsive pleadings. Although the Supreme Court promptly took jurisdiction pursuant to GCR 1963, 816.2(2)(a) on September 9, it was too late for the August 6 primary election (with respect to which the plaintiff says nothing) and barely time for the November 7 election, although oral argument was set for the next, or October term.

Two major questions are raised by this case concerning the June 7, 1974 enactment of MCLA 600.9934(2); MSA 27A.9934(2) because that section of 1974 PA 145 provides for the carrying over of the elected municipal judge of Berkley to sit in the 45a district court which has been transformed from the former Berkley municipal court.

1. May the elected Berkley municipal judge be carried over to serve as the district court judge for the 45a district which geographically encompasses the same area as the Berkley municipal court as 1974 PA 145; MCLA 600.9934, MSA 27A.9934 provides, or is this prohibited by Const 1963, art 6, § 23, as amended, which pertinently reads:

"Whenever a new office of judge in a court of record,

court pursuant to this subsection may file an affidavit of candidacy in like manner as other incumbent judges of the district court and shall be entitled to designation on the ballot as a judge of the district court."

or the district court, is created by law, it shall be filled by election as provided by law."

2. If the carry over provision of 1974 PA 145 is unconstitutional, does this Court possess the authority to order a special election or does the absence of specific legislation establishing special elections preclude the special election and necessitate waiting until the 1976 elections to give these courts their own judges.

If the first question is answered affirmatively then, of course, it is unnecessary to answer the second question.

## II. 1974 PA 145 NOT UNCONSTITUTIONAL.

Plaintiff asserts that the carrying over of a municipal judge to fill the newly created judgeship in District 45a is contrary to the expressed intent of Const 1963, art 6, § 23, as amended, which provides:

"A vacancy shall occur in the office of judge of any court of record or in the district court by death, removal, resignation or vacating of the office, and such vacancy shall be filled by appointment by the governor. The person appointed by the governor shall hold office until 12 noon of the first day of January next succeeding the first general election held after the vacancy occurs, at which election a successor shall be elected for the remainder of the unexpired term. *Whenever a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law.* The supreme court may authorize persons who have been elected and served as judges to perform judicial duties for limited periods or specific assignments." (Emphasis added.)

This is the first occasion we have been called upon to construe Const 1963, art 6, § 23, as

amended. To assist us in our task we apply the
rules of constitutional interpretation set out in
*Traverse City School Dist v Attorney General,* 384
Mich 390, 405–406; 185 NW2d 9 (1971). Two of
those rules require us to 1) ascertain the "common
understanding" of the public who adopted the
measure and 2) "consider the circumstances sur-
rounding the adoption" and the "purpose sought to
be accomplished".

An examination of the "common understanding"
as well as the "circumstances" and "purposes"
attendant upon the passage of Const 1963, art 6,
§ 23, as amended, demonstrate the Legislature has
not exceeded its authority.

The language of the section makes two things
abundantly clear. First, the people intended to
rectify the mistake of the 1963 Constitution in its
original form of having removed the historic con-
stitutional authority of the Governor to appoint
persons to fill judicial vacancies. This Court would
blink the facts of life if it did not take judicial
notice of the fact that this omission embarrassed
the operation of government by leaving important
judicial offices without their own regular incum-
bent for long periods of time. The first sentence of
§ 23, as amended, rectifies this error by restoring
gubernatorial authority to appoint to fill judicial
vacancies caused by the incumbent leaving office
for one reason or another.

Second, the people on the other hand intended
to reserve to themselves the power to fill newly
created judgeships by election "as provided by
law." First, § 23, as amended, specifies such newly
created judgeship "shall be filled by election".
Second, examination of the language describing
the type of vacancy to which the Governor may
appoint makes it clear that newly created judge-

ships are precluded. Included are vacancies "by death, removal, resignation or vacating of the office". In other words there must have been a judge who, for one of the enumerated reasons, is no longer present. Again the reason for this can hardly escape judicial notice, namely the prevention of collusion between the Governor and the Legislature to create a new judgeship for a favored appointee.

It is also worth noting that the Legislature on a previous occasion authorized the continuation of municipal judges when the municipal courts were changed to district courts. 1968 PA 154; MCLA 600.9923; MSA 27A.9923.[3] Interestingly enough this act became effective June 17 of an election year just as 1974 PA 145 became effective June 7 of an election year. Of further note and interest is that the provisions of § 23 were approved by the people about 2 months after the passage of 1968 PA 154 in August of 1968.

So it appears from the "common understanding" as well as the accompanying "circumstances" and "purposes" behind the passage of § 23, as amended, that the Governor would have the power to replace a judge who for some reason left office, but that the Legislature should provide by law for election to fill new created judgeships.

In this case the critical fine question of interpretation is the degree of discretion the Legislature has in establishing the manner in which the new judgeships shall be filled by election. That some degree of discretion was contemplated by the people is clear from the fact that the people said "shall be filled by election *as provided by law*"

_____

[3] The Legislature on one other occasion provided for the carrying over of certain municipal court judges to serve as district court judges. 1969 PA 344; MCLA 600.9930; MSA 27A.9930.

rather than "shall be filled by election at the next election", which would have been no more words and more precise and limited.

The reason for giving the Legislature some discretion is illustrated by the instant case. The date of enactment was June 7, 1974, the primary election was August 6, 1974, hardly time enough for potential candidates to become acquainted with the fact of the new judgeship, the area it served, etc., and certainly not sufficient time to take the necessary steps to qualify and stand for election.

Plaintiff by not filing his suit until July 24, 1974, made it impossible to conduct a primary election and general election for the judicial posts in question on the dates set aside for the primary (August 6) and the general election (November 5). In fact, the plaintiff recognized the time squeeze and did not even include a request for a primary election in his prayer for relief. As it is impossible to conduct the primary and general election for this judgeship on the prescribed dates, the interesting question is raised whether this Court without any legislative authorization would have power to set up a special primary and special election on its own power. However, in this case it is unnecessary to answer this question.

Looking then to the possibility of waiting until the 1976 election, that action would leave a district court without its own judge for a period of two years, because § 23, as amended, specifically precludes the Governor from appointing to a newly created judgeship. It is difficult to conceive that the people would mandate such a state of affairs.

Thus the facts of this case demonstrate forcibly the wisdom of the apparent purpose of the people to give the Legislature a measure of discretion in

providing by law for election to fill the new judge-ships. We do not believe the Legislature has over-stepped the boundaries specified in § 23.[4]

In interpreting § 23 in such a manner, further-more, we follow the final rule of constitutional construction set out in *Traverse City School Dist v Attorney General, supra,* that "[w]herever possible an interpretation that does not create constitu-tional invalidity is preferred to one that does".

## III. CONCLUSION.

Mandamus is not issued as matter of right but is a discretionary writ, *Geib v Kent Circuit Judge,* 311 Mich 631, 636; 19 NW2d 124 (1945); *Donovan v Guy,* 344 Mich 187, 192; 73 NW2d 471 (1955); and *Livonia Drive-In Theatre Co v Livonia,* 363 Mich 438, 446; 109 NW2d 837 (1961). The plaintiff has not made a case for the exercise of our discretion to grant the writ of mandamus by proving that the Legislature has exceeded its constitutional author-ity.[5]

---

[4] The conclusion that the Legislature in passing 1974 PA 145; MCLA 600.9934; MSA 27A.9934 has not exceeded its authority could be buttressed by the fact that this legislation may be considered not to have created "a new office of judge" within the meaning of Const 1963, art 6, § 23. 1974 PA 145 merely divided the 45th district of the district court system which was originally created by 1968 PA 154; MCLA 600.8123(3); MSA 27A.8123(3). Consequently, a strong argu-ment can be made that 1974 PA 145 did not create a "new" court but merely divided a preexisting court into geographic subdivisions.

[5] As was pointed out, plaintiff was delayed in the filing of his suit until such time that it became impossible to conduct primary and general elections on the prescribed dates. Waiting until the 11th hour to challenge some aspect of the electoral process has served as grounds for denying relief. In *O'Brien v Skinner,* 409 US 1240; 93 S Ct 79; 34 L Ed 2d 211 (1972) Justice Marshall in his capacity as Circuit Justice denied relief to prisoners who had waited until the last day of registration before submitting their registration state-ments and four days before the election to file the application before Justice Marshall challenging the constitutionality of a voting statute. Justice Marshall concluded that: "Voting rights are fundamental, and alleged disfranchisement of even a small group of potential voters is

The writ of mandamus is denied.

No costs a public question and one of first impression.

SWAINSON, LEVIN, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with WILLIAMS, J.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, J., concurred in the result of the opinion by WILLIAMS, J.

---

not to be taken lightly. But the very importance of the rights at stake militates against hasty or ill-considered action. This Court cannot operate in the dark and it cannot require state officials to do the impossible. With the case in this posture, I conclude that effective relief cannot be provided at this late date". 409 US 1240, 1242.