KUHN v SECRETARY OF STATE

Docket No. 206199. Submitted January 13, 1998, at Detroit. Decided February 27, 1998, at 9:15 A.M. Leave to appeal denied, 457 Mich 884.

Oakland Circuit Judge Richard D. Kuhn, Neal Hall, and Timothy Kuhn brought an action in the Wayne Circuit Court against the Michigan Secretary of State, the chief judge of the Detroit Recorder's Court, and a Recorder's Court judge, seeking a declaration that MCL 600.9931(1); MSA 27A.9931(1), which abolished the Detroit Recorder's Court and merged it with the Wayne Circuit Court, violated the Michigan Constitution because it transfers Recorder's Court judges to the Wayne Circuit Court and provides that the twenty-nine new judicial offices for judges of the circuit court be filled by the transferring judges and not by election. The court, Robert J. Colombo, Jr., J., granted summary disposition for the defendants, finding that Judge Kuhn lacked standing to bring the action and that the statute did not violate Const 1963, art 6, §§ 1, 23. The plaintiffs appealed.

The Court of Appeals held:

1. Const 1963, art 6, §§ 11, 26 permit the Legislature to expand the number of judicial offices in the Wayne Circuit Court, abolish the Detroit Recorder's Court, and, thereafter, transfer the duties of the Detroit Recorder's Court elsewhere.

2. The Legislature's provision in MCL 600.9931; MSA 27A.9931 that the former Detroit Recorder's Court judges shall be carried over to the circuit court until elections can be held to fill the new circuit court judicial offices does not violate Const 1963, art 6, § 23. The Legislature's actions were a proper exercise of its discretion, as recognized in *Schwartz v Secretary of State*, 393 Mich 42 (1974), to establish the manner in which new judgeships shall be filled by election and were within the boundaries of § 23. The court properly found MCL 600.9931; MSA 27A.9931 to be constitutional.

3. The court properly found that Judge Kuhn did not have standing to bring his lawsuit.

Affirmed.

1. CONSTITUTIONAL LAW — STATUTES — COURTS — ABOLISHMENT — EXPANSION — NEW JUDGESHIPS.

Const 1963, art 6, §§ 11, 26 permit the Legislature's statutory expansion of the number of judicial offices in the Wayne Circuit Court, abolishment of the Detroit Recorders' Court, and, thereafter, the transfer of the duties of the Detroit Recorder's Court elsewhere (MCL 600.9931; MSA 27A.9931).

2. CONSTITUTIONAL LAW — STATUTES — COURTS — NEW JUDGESHIPS — ELECTIONS.

The provision in MCL 600.9931; MSA 27A.9931 that incumbent judges of the Detroit Recorder's Court shall be carried over to the Wayne Circuit Court, upon abolishment of the Detroit Recorder's Court, until elections can be held to fill the new circuit court judicial offices in the expanded circuit court does not violate the provision in Const 1963, art 6, § 23 that states that whenever "a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law" and is within the Legislature's discretion to establish the manner in which new judgeships shall be filled by election.

3. ACTIONS — PARTIES — STANDING.

The concept of standing is used to denote the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy; a plaintiff must also demonstrate that the plaintiff's substantial interest will be adversely affected in a manner distinct from the citizenry at large, i.e., an actual injury or likely chance of immediate injury different from the public; a plaintiff's suit generally is precluded if the plaintiff's interests are no different from those of the public.

*Lawrence J. Bunting*, for the plaintiffs.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Deborah A. Devine* and *Katharyn A. Barron*, Assistant Attorneys General, for Secretary of State Candice S. Miller.

*S. Allen Early & Associates* (by *S. Allen Early* and *Suzanna Kostovski*), for Judge Vera Massey Jones.

*Clark Hill PLC* (by *J. Thomas Lenga* and *John M. Ketcham*), for Judge Michael F. Sapala.

Before: GAGE, P.J., and REILLY and JANSEN, JJ.

GAGE, P.J. Plaintiffs appeal as of right an order granting summary disposition in favor of defendants. Plaintiffs argue that the circuit court erred in finding that MCL 600.9931; MSA 27A.9931 is constitutional and that plaintiff Oakland Circuit Judge Richard D. Kuhn lacked standing to bring this lawsuit.

On July 17, 1996, the Legislature enacted 1996 PA 374, effective October 1, 1996. By this act, the Detroit Recorder's Court was abolished and merged with the Wayne Circuit Court. The act provides, in pertinent part:

> The recorder's court of the city of Detroit is abolished and merged with the third judicial circuit of the circuit court effective October 1, 1997. The incumbent judges of the recorder's court of the city of Detroit on September 30, 1997 shall become judges of the third judicial circuit of the circuit court on October 1, 1997, and shall serve as circuit judges until January 1 of the year in which their terms as judges of the recorder's court of the city of Detroit would normally have expired. Effective October 1, 1997, each incumbent judge of the recorder's court of the city of Detroit who was appointed to that office by the governor after the filing deadline for the August primary preceding the general election of 1996 shall become a judge of the third circuit of the circuit court and shall serve as a circuit judge until January 1 next succeeding the first general election held after the vacancy to which he or she was appointed occurs, at which election a successor shall be elected for the remainder of the unexpired term which the predecessor incumbent of the recorder's court would have served had that incumbent remained in office until his or her term would normally have expired. In seeking election to the third circuit of the circuit court after October 1, 1997, a judge of the recorder's court becoming a judge of the third circuit of the circuit court pursuant to this subsection may file an affidavit of candidacy in like manner as other incumbent judges of the circuit court, and shall be entitled

to designation on the ballot as a judge of the circuit court.
[MCL 600.9931(1); MSA 27A.9931(1).]

On July 2, 1997, plaintiffs filed a complaint for declaratory judgment against defendants, Secretary of State Candice S. Miller, Recorder's Court Chief Judge Vera Massey Jones, and Recorder's Court Judge Michael F. Sapala, in their official capacities. Plaintiffs alleged that MCL 600.9931; MSA 27A.9931 violates the Michigan Constitution because (1) it transfers judges of the limited jurisdiction Recorder's Court to the general jurisdiction Wayne Circuit Court, and (2) it provides that the twenty-nine new judicial offices for judges of the Third Judicial Circuit would be filled by transferring judges from the Recorder's Court and not by election as provided by the state constitution. Plaintiffs sought a declaratory judgment holding the statute unconstitutional and a permanent injunction enjoining the reorganization of the Third Judicial Circuit.

On July 22, 1997, defendants Judges Jones and Sapala jointly filed an answer to plaintiffs' complaint and moved for summary disposition. On August 5, 1997, defendant Miller filed a separate answer and also filed a motion for summary disposition.[1] All three defendants moved for summary disposition on essentially the same grounds: (1) MCL 600.9931; MSA 27A.9931 is constitutional, (2) Judge Kuhn lacked standing to bring the action, and (3) plaintiffs' claims were barred by the doctrine of laches.

---

[1] On August 4, 1997, and August 14, 1997, Judges Jones and Sapala, respectively, after both having substituted counsel, filed separate motions for summary disposition.

On August 15, 1997, pursuant to MCR 2.116(C)(9) and MCR 3.310(H), plaintiffs moved for summary disposition and the entry of a permanent injunction. On September 5, 1997, a hearing regarding the cross-motions for summary disposition was held. Later that same day, the circuit court entered an opinion and order granting defendants' motions for summary disposition and denying plaintiffs' motion. The court found that Judge Kuhn lacked capacity to sue and, therefore, dismissed Judge Kuhn pursuant to MCR 2.116(C)(5). The court further found that MCL 600.9931; MSA 27A.9931 did not violate Const 1963, art 6, §§ 1 and 23, as amended. The court therefore granted summary disposition under MCR 2.116(C)(8).

On appeal, plaintiffs again argue that MCL 600.9931; MSA 27A.9931 violates the Michigan Constitution. In particular, plaintiffs contend that the transfer of judges from a legislatively created court, the Recorder's Court, to a constitutionally created court, the Wayne Circuit Court, violates Const 1963, art 6, §§ 1 and 11, and that art 6, § 23 is violated because new judgeships in the Wayne Circuit Court must be filled by election. We disagree.

We review a grant of summary disposition pursuant to MCR 2.116(C)(8) de novo. *State Treasurer v Schuster*, 215 Mich App 347, 350; 547 NW2d 332 (1996). Pursuant to MCR 2.116(C)(8), summary disposition may be granted on the ground that the opposing party "has failed to state a claim on which relief can be granted." *Radtke v Everett*, 442 Mich 368, 373; 501 NW2d 155 (1993). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone; the motion may not be supported with documentary evidence. *Simko v Blake*, 448 Mich

648, 654; 532 NW2d 842 (1995); *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). All factual allegations in support of the claim are accepted as true, as well as any reasonable inferences or conclusions that can be drawn from the facts. *Marcelletti v Bathani*, 198 Mich App 655, 658; 500 NW2d 124 (1993). The motion should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery. *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992).

Constitutional issues and construction are questions of law and, therefore, are also reviewed by this Court de novo. *Mahaffey v Attorney General*, 222 Mich App 325, 334; 564 NW2d 104 (1997). In interpreting constitutional provisions, the primary duty of the judiciary is to ascertain the purpose and intent of the provision at issue. *White v Ann Arbor*, 406 Mich 554, 562; 281 NW2d 283 (1979). The intent to determine is that of the people who adopted the constitutional provision at issue. *Charles Reinhart Co v Winiemko*, 444 Mich 579, 606; 513 NW2d 773 (1994). In doing so, courts apply the rule of common understanding. The interpretation that should be given a provision is that which reasonable minds, the great mass of people themselves, would give it. *House Speaker v Governor*, 443 Mich 560, 577; 506 NW2d 190 (1993). Records of the constitutional convention may be consulted to ascertain the intent of the provision. *Committee for Constitutional Reform v Secretary of State*, 425 Mich 336, 341; 389 NW2d 430 (1986). An interpretation of the constitution that does not create a constitutional invalidity is preferred to one that does. *House Speaker v Governor, supra* at 585.

Plaintiffs first contend that transferring judges from a limited jurisdiction court to a general jurisdiction court violates Const 1963, art 6, §§ 1 and 11. Const 1963, art 6, § 1 provides:

> The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by a two-thirds vote of the members elected to and serving in each house.

Const 1963, art 6, § 11 provides:

> The state shall be divided into judicial circuits along county lines in each of which there shall be elected one or more circuit judges as provided by law. Sessions of the circuit court shall be held at least four times in each year in every county organized for judicial purposes. Each circuit judge shall hold court in the county or counties within the circuit in which he is elected, and in other circuits as may be provided by rules of the supreme court. The number of judges may be changed and circuits may be created, altered and discontinued by law and the number of judges shall be changed and circuits shall be created, altered and discontinued on recommendation of the supreme court to reflect changes in judicial activity. No change in the number of judges or alteration or discontinuance of a circuit shall have the effect of removing a judge from office during his term.

Despite plaintiffs' contention that the foregoing provisions of the Michigan Constitution are violated by the transfer of judges from the Detroit Recorder's Court to the Third Judicial Circuit Court, we find defendants' argument that the foregoing constitutional provisions, among others, actually empowered the Legislature to enact MCL 600.9931; MSA 27A.9931 more persuasive. Article 6, § 11 specifically provides

that, with respect to the circuit court, the "number of judges may be changed . . . ." On the other hand, with respect to the Recorder's Court, Const 1963, art 6, § 26 provides the "[s]tatutory courts in existence at the time this constitution becomes effective shall retain their powers and jurisdiction, except as provided by law, until they are abolished by law." The Convention Comment regarding art 6, § 26 specifically includes the Detroit Recorder's Court among the statutory courts discussed and notes that the Legislature "has the power to abolish [the statutory courts] or transfer their duties elsewhere." Thus, art 6, §§ 11 and 26 permit the Legislature to expand the number of judicial offices in the Wayne Circuit Court, abolish the Detroit Recorder's Court, and, thereafter, transfer the duties of the Recorder's Court elsewhere. Given this, the only remaining issue is the constitutionality of the Legislature's provision that the former Recorder's Court judges shall be carried over to the circuit court until elections can be held to fill the new circuit court judicial offices.

Plaintiffs contend that carrying over Recorder's Court judges to fill the twenty-nine new circuit court seats violates Const 1963, art 6, § 23, which, according to plaintiffs, requires that the positions be filled only by election. As ratified in 1963, art 6, § 23 provided:

> A vacancy in the elective office of a judge of any court of record shall be filled at a general or special election as provided by law. The supreme court may authorize persons who have served as judges and who have retired, to perform judicial duties for the limited period of time from the occurrence of the vacancy until the successor is elected and qualified. Such persons shall be ineligible for election to fill the vacancy.

This was a significant change from the previous constitution, which granted the Governor the power to make vacancy appointments. *Attorney General v Riley*, 417 Mich 119, 132-133; 332 NW2d 353 (1983). In 1968, however, art 6, § 23 was amended to reinstate the Governor's power to fill vacancies. *Id.* As a result, art 6, § 23 now provides:

> A vacancy shall occur in the office of judge of any court of record or in the district court by death, removal, resignation or vacating of the office, and such vacancy shall be filled by appointment by the governor. The person appointed by the governor shall hold office until 12 noon of the first day of January next succeeding the first general election held after the vacancy occurs, at which election a successor shall be elected for the remainder of the unexpired term. Whenever a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law. The supreme court may authorize persons who have been elected and served as judges to perform judicial duties for limited periods or specific assignments.

Plaintiffs contend that MCL 600.9931(1); MSA 27A.9931(1) violates the provision of art 6, § 23 that states, "Whenever a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law." In finding to the contrary, the circuit court relied on the Supreme Court's opinion in *Schwartz v Secretary of State*, 393 Mich 42; 222 NW2d 517 (1974). In *Schwartz*, the Supreme Court interpreted Const 1963, art 6, § 23 in the context of the Legislature's enacting 1974 PA 145, MCL 600.9934; MSA 27A.9934. By this statute, the Legislature transformed five Oakland County municipal courts with five judges into two district courts with three judges. *Schwartz, supra* at 44. The plaintiff

in *Schwartz* sought a writ of mandamus to compel the Secretary of State and the county clerk to hold an election for the judgeship in one of the new districts, 45a, the district that was wholly contained in Berkley, Michigan, at the November general election instead of carrying over the current Berkley municipal judge. In *Schwartz*, the plaintiff based his constitutional challenge on Const 1963, art 6, § 23. *Id.* at 44-45.

In finding the statute that permitted the Berkley municipal judge to be carried over to serve as the district court judge to be constitutional, the Supreme Court first noted the different manners in which judicial seats could be filled pursuant to § 23:

> An examination of the "common understanding" as well as the "circumstances" and "purposes" attendant upon the passage of Const 1963, art 6, § 23, as amended, demonstrate the Legislature has not exceeded its authority.
>
> The language of the section makes two things abundantly clear. First, the people intended to rectify the mistake of the 1963 Constitution in its original form of having removed the historic constitutional authority of the Governor to appoint persons to fill judicial vacancies. . . .
>
> Second, the people on the other hand intended to reserve to themselves the power to fill newly created judgeships by election "as provided by law." First, § 23, as amended, specifies such newly created judgeship "shall be filled by election." Second, examination of the language describing the type of vacancy to which the Governor may appoint makes it clear that newly created judgeships are precluded. Included are vacancies "by death, removal, resignation or vacating of the office." In other words there must have been a judge who, for one of the enumerated reasons, is no longer present. . . .
>
> It is also worth noting that the Legislature on a previous occasion authorized the continuation of municipal judges when the municipal courts were changed to district courts. 1968 PA 154; MCLA 600.9923; MSA 27A.9923. Interestingly

enough this act became effective June 17 of an election year just as 1974 PA 145 became effective June 7 of an election year. Of further note and interest is that the provisions of § 23 were approved by the people about 2 months after the passage of 1968 PA 154 in August of 1968.

*So it appears from the "common understanding" as well as the accompanying "circumstances" and "purposes" behind the passage of § 23, as amended, that the Governor would have the power to replace a judge who for some reason left office, but that the Legislature should provide by law for election to fill new created judgeships. [Schwartz, supra at 47-48 (emphasis added).]*

After determining that the people retained the right to fill newly created judgeships by election, the Supreme Court went on to discuss the "degree of discretion the Legislature has in establishing the *manner* in which the new judgeships shall be filled by election." *Id.* at 48 (emphasis added). The Supreme Court confidently stated that there was in fact a degree of discretion afforded the Legislature:

That some degree of discretion was contemplated by the people is clear from the fact that the people said "shall be filled by election *as provided by law*" rather than "shall be filled by election at the next election," which would have been no more words and more precise and limited. [*Id.* at 48-49.]

The Court then noted that the need for some discretion was aptly illustrated by the facts of the case before it:

The reason for giving the Legislature some discretion is illustrated by the instant case. The date of enactment was June 7, 1974, the primary election was August 6, 1974, hardly time enough for potential candidates to become acquainted with the fact of the new judgeship, the area it

served, etc., and certainly not sufficient time to take the necessary steps to qualify and stand for election.

*     *     *

Looking then to the possibility of waiting until the 1976 election, that action would leave a district court without its own judge for a period of two years, because § 23, as amended, specifically precludes the Governor from appointing to a newly created judgeship. It is difficult to conceive that the people would mandate such a state of affairs.

Thus the facts of this case demonstrate forcibly the wisdom of the apparent purpose of the people to give the Legislature a measure of discretion in providing by law for election to fill the new judgeships. [*Id.* at 49-50.]

The Supreme Court in *Schwartz* concluded that the Legislature's actions were a proper exercise of its discretion and within the boundaries of § 23.

We are not convinced that *Schwartz* was correctly decided. Were we to decide *Schwartz* today, we would not be so willing to grant the Legislature the same degree of discretion in establishing the manner in which new judgeships shall be filled by election. Nonetheless, we are bound by the precedential effect of this Supreme Court opinion and obligated to follow its holding in deciding the present case. Accordingly, we find that the manner in which the Legislature provided for the election to fill the newly created Wayne Circuit Court judgeships was within the discretion recognized by the Supreme Court in *Schwartz*. Plaintiffs have not, under the circumstances, established that the Legislature has exceeded its constitutional authority.

Plaintiffs contend that *Schwartz* can be distinguished from the present case. We do not find that

the "distinguishing features" identified by plaintiffs warrant ignoring the holding in *Schwartz*. First, plaintiffs contend that in *Schwartz* a new office of judge was not actually created. Plaintiffs then reason that because MCL 600.9931; MSA 27A.9931 does create a new office of judge, *Schwartz* does not apply. In support of this assertion, plaintiffs rely on statements made by the Supreme Court in footnote 4 of the *Schwartz* opinion:

> The conclusion that the Legislature in passing 1974 PA 145; MCLA 600.9934; MSA 27A.9934 has not exceeded its authority could be buttressed by the fact that this legislation may be considered not to have created "a new office of judge" within the meaning of Const 1963, art 6, § 23. 1974 PA 145 merely divided the 45th district of the district court system which was originally created by 1968 PA 154; MCLA 600.8123(3); MSA 27A.8123(3). Consequently, a strong argument can be made that 1974 PA 145 did not create a "new" court but merely divided a preexisting court into geographic subdivisions. [*Schwartz, supra* at 50, n 4.]

First, we find that the Court's comments in footnote 4 are dicta and, therefore, not binding. See *Roberts v Auto-Owners Ins Co*, 422 Mich 594, 597-598; 374 NW2d 905 (1985). Moreover, given the fact that the Supreme Court's entire analysis in *Schwartz* was premised upon the assumption that a new office of judge was created by MCL 600.9934; MSA 27A.9934, it is irrelevant if a new office of judge was not actually created. The Supreme Court was interpreting a provision of Const 1963, art 6, § 23 that dealt directly with the manner in which new offices of judge were to be filled and, therefore, the Court's analysis is applicable.

Plaintiffs also argue that in *Schwartz*, unlike the present case, the two courts covered the same geo-

graphic jurisdiction, the city of Berkley. Plaintiffs reason that because there was a geographic oneness between the "old" and the "new" courts, the Legislative action was less objectionable in *Schwartz*. However, the "geographical oneness" of the two courts in *Schwartz* had no bearing on the Court's reasoning.

Finally, plaintiffs argue that because of the nature of the courts involved in *Schwartz*, i.e., district courts, the Court's analysis in *Schwartz* does not apply. We disagree. Const 1963, art 6, § 23, by its very language, specifically applies to both the circuit courts and the district courts. Section 23 states: "Whenever a new office of judge in a court of record, or the district court, is created by law, it shall be filled by election as provided by law." That portion of Const 1963, art 6, § 23 draws no distinction between newly created district or circuit court judgeships. Consequently, the Court's analysis of § 23 in *Schwartz* is equally applicable in the context of the district and circuit courts.

Accordingly, and in light of the our foregoing analysis, we hold that the circuit court did not err in holding MCL 600.9931; MSA 27A.9931 to be constitutional and in granting defendants summary disposition with regard to this issue.

Next, plaintiffs argue that the circuit court erred in granting summary disposition to defendants with respect to the issue of Judge Kuhn's standing. In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(5), this Court must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties. *Dep't of Social Services v Baayoun*, 204 Mich App 170, 173; 514 NW2d 522 (1994). This Court reviews

the trial court's ruling de novo and examines the entire record to determine whether the defendant is entitled to judgment as a matter of law. *Id.*

The concept of standing is "used to denote the existence of a party's interest in the outcome of litigation that will ensure sincere and vigorous advocacy." *House Speaker v State Administrative Bd*, 441 Mich 547, 554; 495 NW2d 539 (1993). This, however, is not the totality of the test of standing. *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629, 643; 537 NW2d 436 (1995). "The plaintiff must also demonstrate that his substantial interest will be adversely affected in a manner distinct from the citizenry at large, i.e., an actual injury or likely chance of immediate injury different from the public." *Id.* If the plaintiff's interests are no different from those of the public, the plaintiff's suit is generally precluded. *Id.*

In the present case, Judge Kuhn cannot establish that he has suffered an injury or that there is a likely chance that he will suffer immediate injury different from the public. Plaintiffs contend that MCL 600.9931; MSA 27A.9931 unconstitutionally deprives the electorate of an opportunity to vote for twenty-nine judicial seats in the Wayne Circuit Court. Judge Kuhn, as an Oakland County resident, is neither a Wayne County resident, a voter registered in Wayne County, nor a potential candidate for one of those twenty-nine newly created judgeships.[2] Furthermore, his status as an Oakland County Circuit Court judge does not grant

---

[2] Const 1963, art 6, § 12 provides:

Circuit judges shall be nominated and elected at non-partisan elections in the circuit in which they reside, and shall hold office for a term of six years and until their successors are elected and qualified. In circuits having more than one circuit judge their terms

him standing because this statute does not dilute the power or integrity of his position. Thus, he has no standing to bring this lawsuit because he has failed to establish that he has suffered an injury or that he is likely to suffer an injury different from the general public.

Finally, we note defendants' argument that plaintiffs' cause of action was barred by the equitable doctrine of laches. This judicially imposed principle denotes " 'the passage of time combined with a change in condition which would make it inequitable to enforce a claim against the defendant.' " *Lothian v Detroit*, 414 Mich 160, 168; 324 NW2d 9 (1982) (citation omitted). The doctrine reflects " 'the exercise of the reserved power of equity to withhold relief otherwise regularly given where in the particular case the granting of such relief would be unfair and unjust.' " *Id.* (citation omitted). When considering whether a plaintiff is chargeable with laches, courts must pay attention to the prejudice caused by the delay. Generally, " '[w]here the situation of neither party has changed materially, and the delay of one has not put the other in a worse condition, the defense of laches cannot . . . be recognized.' " *Id.* (citation omitted).

In the present case, the circuit court did not rule regarding this issue, and the issue is therefore not properly before us. It is also not necessary, given our holding with respect to the constitutionality of MCL 600.9931; MSA 27A.9931, for us to address this issue. Nonetheless, we note that plaintiffs waited for almost one year after the statute was passed to allege that it

of office shall be arranged by law to provide that not all terms will expire at the same time.

was unconstitutional. They filed their complaint three months before the effective date of the merger, after much of the work necessary to effect the merger had been accomplished. Even after the circuit court issued its opinion and order, plaintiffs waited two weeks to file an emergency motion for leave to appeal, which was filed only twelve days before the merger took place.

In *Schwartz, supra* at 50, n 5, our Supreme Court expressed its displeasure with the plaintiff's waiting seven weeks after the questioned legislation was approved to file his complaint, commenting, "Waiting until the 11th hour to challenge some aspect of the electoral process has served as grounds for denying relief." In an earlier opinion, *Bigger v Pontiac*, 390 Mich 1, 4; 210 NW2d 1 (1973), the Supreme Court had noted that the nature of the case often dictates the speed at which a plaintiff must act:

> In cases where because of the nature of the subject matter absolute time limits must be observed, the law requires speedy resort to the courts by those who wish to prevent or modify contemplated transactions or procedures.

We agree and note that were it not for our finding that the statute is constitutional, we would have seriously considered holding that the doctrine of laches barred plaintiffs' action.

Affirmed.