*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KRIS KRSTOVSKI,

        Plaintiff-Appellant,

v

DANIEL KUKES,

        Defendant-Appellee.

UNPUBLISHED
October 19, 2023

No. 363511
Oakland Circuit Court
LC No. 2022-194818-CK

Before: K. F. KELLY, P.J., and JANSEN and CAMERON, JJ.

PER CURIAM.

In this dispute over management of a business enterprise, plaintiff appeals as of right the trial court's order granting summary disposition to defendant. We affirm.

Plaintiff and defendant, respectively, are members of limited-liability companies (LLCs), the business dealings of which are at issue. Plaintiff is the managing member and 50% owner of K2 West Lansing Phase I, LLC (K2), which is 50% owned by nonparty Jerome Masakowski. Defendant is the sole managing member of LIP Holdings, LLC (LIP Holdings), which is the 100% owner of LIP West Lansing, LLC (LIP).[1]

On August 17, 2020, K2 and LIP entered into an Operating Agreement for the formation and governance of K2-LIP JV West Lansing, LLC (JV). LIP and K2 are the only two members of JV, each owning 50%, and the Operating Agreement appointed plaintiff and Kevin Baker as the only two managers. Defendant replaced Baker, who actually signed and was listed as co-manager of JV in the Operating Agreement, after Baker's death. Exhibit A of the Operating Agreement

---

[1] The facts as they appear in this opinion reflect the circumstances at the time of plaintiff's first amended complaint. In his appellate brief, plaintiff indicates his interest in K2-LIP JV West Lansing, LLC (JV), through his ownership of K2 West Lansing Phase I, LLC (K2), has been sold to a third party. Thus, the facts as they appear here may no longer be accurate.

contains plaintiff's and Baker's signatures, both as JV's managers and on behalf of JV's two members—LIP and K2.

In the Operating Agreement, JV (referred to in the Agreement as "the Company") is the sole member of West Lansing Retail Phase I, LLC (WL Phase I), which is the sole member of West Lansing Retail Development II, LLC (WL Retail). WL Retail is the owner of commercial property in Delta Township, which plaintiff refers to as the "Project" in his first amended complaint (FAC), but which the Operating Agreement terms "Company Property" or "Property" (hereinafter referred to as the Property). Specifically, Article 1.11 of the Operating Agreement states:

> **"Company Property"** or **"Property"** means one hundred (100%) percent of the membership interests in Lansing Company, which will purchase, own, operate, lease, finance, exchange and/or sell a multi-tenant retail shopping center located in Delta Township, MI, as provided in and subject to the Limited Liability Company Agreement of Lansing Company, and as provided in and subject to this Agreement.

The role of JV's co-managers in the operation of JV and the development of the Property are the subject of the parties' dispute.

On June 28, 2022, plaintiff, in his individual capacity, filed his original complaint in this matter against defendant, claiming breach of contract, breach of fiduciary duty, and intentional interference with economic relations. Plaintiff amended his complaint on August 17, 2022, adding more detailed factual allegations and changing his third claim to intentional interference with a contractual relationship. Plaintiff alleged: (1) Best Buy and At Home signed leases for the Property owned by WL Retail, (2) he and K2 had been in discussions with defendant and LIP regarding purchasing LIP's interest in the Property, but the negotiations came to an impasse, (3) defendant, individually or through LIP or LIP Holdings, feigned deadlock with regard to the operations of JV to maximize the exit price for his interest, and (4) defendant's actions disrupted the Best Buy and At Home leases and diminished JV's assets. He further alleges that defendant, through LIP, improperly accused him of acting in violation of his duties to JV, WL Phase I, and WL Retail, in a separate lawsuit.

On the basis of these allegations, plaintiff claimed breach of the Operating Agreement in Count I, asserting defendant's actions, either directly or through LIP or LIP Holdings, breached various portions of the Operating Agreement, including Article 5, causing a diminution in value of his ownership rights in JV, WL Phase I, and WL Retail. In Count II, plaintiff claimed defendant, as co-manager of JV and party to the Operating Agreement, breached his fiduciary duties under the Operating Agreement and MCL 450.4515(1), to conduct JV's affairs in the best interests of JV and its members. And, in Count III, plaintiff claimed intentional interference with a contractual relationship, alleging defendant interfered with the Best Buy and At Home leases, as well as plaintiff's interests in JV, with the intent to "exert a higher price from [plaintiff] to pay for [defendant's] exit from JV."

Defendant moved for summary disposition of plaintiff's FAC under MCR 2.116(C)(8), arguing: (1) plaintiff lacked standing, and is not a real party in interest to assert the claims raised in his amended complaint, because those claims seek "redress [of] alleged losses not suffered by

him *individually*, but alleged losses suffered through a series of entities *legally distinct* from [plaintiff]," and (2) even if plaintiff had standing to raise the claims in his FAC, each failed as a matter of law.

Without oral argument, the trial court granted defendant's motion for summary disposition under MCR 2.116(C)(5) and (C)(8), stating:

> . . . Plaintiff lacks standing, i.e., the legal capacity to sue, for breach of an operating agreement, breach of fiduciary duty (arising out of the operating agreement) and tortious interference (with the operating agreement) when Plaintiff (individually) is not a party to the operating agreement in question, and the losses allegedly sustained relative thereto reside with the distinct legal entities involved therein. *Belle Isle Grill Corp* [*v Detroit*], [256 Mich App 463; 666 NW2d 271 (2003)], *supra*. Consequently, Plaintiff's Amended Complaint is **DISMISSED** with prejudice in its entirety.

Plaintiff contends on appeal that the trial court erred in granting defendant summary disposition because he has standing and is the real party in interest to assert the claims raised in his FAC. We disagree.

Initially, we note the trial court incorrectly conflated the concepts of standing and capacity to sue, and that its reliance on MCR 2.116(C)(5) to grant defendant's motion was, therefore, inappropriate. Legal capacity to sue involves the ability to initiate any lawsuit. In contrast, "[a] motion for summary disposition asserting as its basis the doctrine of standing invokes a prudential doctrine that focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 620; 873 NW2d 783 (2015) (quotation marks and citation omitted). Similarly, "the defense that a plaintiff is not the real party in interest is not the same as the legal capacity-to-sue defense." *Id*. (quotation marks and citation omitted). Motions asserting lack of standing or the defense that a plaintiff is not the real party in interest would be within MCR 2.116(C)(8) or MCR 2.116(C)(10), as opposed to MCR 2.116(C)(5). *Id*. at 620-621. Nevertheless, the trial court also relied in part on MCR 2.116(C)(8) to grant defendant's motion for summary disposition, so any error was harmless. See MCR 2.613(A).

Standing and the related issue of whether a plaintiff is a real party in interest are questions of law this Court reviews de novo. *Pontiac Police*, 309 Mich App at 621. We also review de novo a trial court's grant of summary disposition under MCR 2.116(C)(8) "to determine whether the opposing party failed to state a claim upon which relief can be granted." *Charter Twp of Pittsfield v Washtenaw County Treasurer*, 338 Mich App 440, 448; 980 NW2d 119 (2021), citing *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). As stated by this Court in *Dalley*, 287 Mich App at 304-305:

> A court may grant summary disposition under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. *Corley v Detroit Bd of Ed*, 470 Mich 274, 277; 681 NW2d 342

(2004). When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). Summary disposition on the basis of subrule (C)(8) should be granted only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

However, in an action based on a written contract, the contract is considered part of the pleadings for review under MCR 2.116(C)(8). *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).[2]

The trial court did not err in granting defendant's motion for summary disposition of plaintiff's FAC on the basis that plaintiff lacks standing and is not the real party in interest to assert the claims raised. Again, "[t]he purpose of the standing doctrine is to assess whether a litigant's interest in the issue is sufficient to ensure sincere and vigorous advocacy." *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). Relatedly, "[a]n action must be prosecuted in the name of the real party in interest . . . ." *Pontiac Police*, 309 Mich App at 621 (quotation marks and citation omitted; alteration in original).

In the corporation context, "[t]he doctrine of standing provides that a suit to enforce corporate rights or to redress or prevent injury to a corporation, whether arising from contract or tort, ordinarily must be brought in the name of the corporation, and not that of a stockholder, officer, or employee." *Belle Isle Grill Corp*, 256 Mich App at 474. In other words:

> [A] suit to enforce corporate rights or to redress injury to the corporation is a derivative suit; although it may be brought by the shareholder, the action itself belongs to the corporation.

> \* \* \*

> A direct action, on the other hand, belongs to the shareholder; it seeks redress for harm done to the shareholder or to enforce a personal right belonging to the shareholder independently from the corporation. [*Murphy v Inman*, 509 Mich 132, 160-161; 983 NW2d 354 (2022) (citations omitted).]

"Although a limited liability company is not a corporation under Michigan law, it is nonetheless true that the rules regarding corporate form apply equally to limited liability companies." *Salem Springs, LLC v Salem Twp*, 312 Mich App 210, 223; 880 NW2d 793 (2015) (citations omitted).

---

[2] Although plaintiff did not attach the Operating Agreement to his FAC, the Operating Agreement is referenced throughout, and was attached to defendant's motion for summary disposition.

In *Murphy*, which involved litigation arising from a corporate cash-out merger agreement, our Supreme Court refined the framework for determining whether an action is direct or derivative, holding "[c]ourts must ask (1) who suffered the alleged harm, and (2) who would receive the benefit of any remedy recovered." *Murphy*, 509 Mich at 165. "If the answer to both questions is the corporation, the action is derivative. If the shareholder suffers the harm independent of the corporation and receives the remedy rather than the corporation, the action is direct." *Id*.

Relying in part on *Murphy*, plaintiff argues he has standing to sue, and is the real party in interest to assert the claims raised in his FAC, because he suffered direct, individual harm as a result of defendant's actions, and would receive the benefit of any remedy recovered. A review of the FAC and Operating Agreement reveals otherwise.

Even construing the FAC in a light most favorable to plaintiff, the "direct" injuries alleged within are in actuality derivative of those suffered by the subject entities. In Count I, plaintiff claims defendant, either directly or through LIP or LIP Holdings, breached various portions of the Operating Agreement, including Article 5, which diminished the value of his ownership interests in JV, WL Phase I, and WL Retail. However, plaintiff is not, *individually*, a member or owner of JV, WL Phase I, or WL Retail. Rather, he is a managing member of K2, which, in turn, is a 50% member of JV. Plaintiff's factual allegations only further demonstrate the derivative nature of his claims. Plaintiff alleges he and K2 had been in discussions with defendant and LIP to purchase LIP's interest in the Property, but those discussions came to an impasse when defendant, either individually or through LIP, tried to maximize the exit price by feigning deadlock with regard to JV's operations. Ultimately, plaintiff claims defendant's actions disrupted leases from Best Buy and At Home for the Property owned by WL Retail. Again, at least on the basis of these allegations, any injury caused by defendant's alleged efforts to feign deadlock with JV's operations were suffered directly by WL Retail, WL Phase I, JV, and JV's members, which included only K2 and LIP Holdings. Although plaintiff argues defendant's actions misappropriated his investment in JV, plaintiff made no direct investment in JV. Accordingly, even if plaintiff may have been injured, as well, through his membership in, and ownership of K2, that injury would not have been suffered independent of the LLCs. *Murphy*, 509 Mich at 165.

Plaintiff argues he suffered direct harm because he, not JV, would be responsible for paying a higher price for defendant's interest in the various entities, but we assume he would only do so as member of K2, and plaintiff does not indicate otherwise. Thus, again, he would not suffer that alleged injury independent of the LLC. And, plaintiff's reliance on the holding in *Murphy*, *id*. at 166-167, that ownership of shares in a corporation are the personal property of the shareholder, to argue he suffered direct harm here, is unfounded. *Murphy* involved litigation arising from a cash-out merger agreement. There, our Supreme Court concluded the plaintiff had standing to bring a direct shareholder action against the defendants for an alleged breach of their common-law fiduciary duties in handling the merger, because *in the context of a cash-out merger transaction*, a breach of fiduciary duties would result in the shareholders of the target corporation suffering harm directly and exclusively. *Id*. at 166-167. This case does not involve a corporate cash-out merger transaction, and the Supreme Court in *Murphy* explicitly acknowledged the narrow context presented there. *Id*. at 150-151.

Plaintiff also lacks standing to assert the claims raised in Counts II and III of his FAC. In Count II, plaintiff claims defendant, as co-manager of JV and party to the Operating Agreement,

breached his fiduciary duty to conduct JV's affairs in the best interests of JV and its members, and this breach interfered with plaintiff's interests in JV and the related entities. In Count III, plaintiff claims defendant intentionally interfered with the Best Buy and At Home leases with the intent to delay construction on the Property and exert a higher price from plaintiff for his exit from JV. But, again, plaintiff is not a member of JV directly. His only interest in JV and its related entities is through his membership in K2 and his responsibilities as co-manager. Therefore, at least on the basis of the allegations stated in his FAC, plaintiff lacks standing and is not the real party in interest to assert his claims of breach of fiduciary duty or intentional interference.

Plaintiff asserts on appeal that he suffered direct and individual harm because: (1) defendant's nonperformance of managerial duties exposed plaintiff to LIP's litigation against him, and (2) by virtue of defendant's actions resulting in the diminution of JV's assets, he lost a valuable right to be indemnified in that lawsuit through his service as co-manager of JV. While plaintiff may have suffered such harms, in reviewing a motion for summary disposition under MCR 2.116(C)(8), we cannot look beyond the pleadings, *Dalley*, 287 Mich App at 304-305, and plaintiff does not allege these injuries in his FAC. As part of his general allegations, he does assert defendant, through LIP, improperly and without basis accused him of acting in violation of his duties to the various entities, but he does not specifically connect this general allegation to any of his three claims. "[S]tanding is determined at the time the complaint is filed." *League of Women Voters of Mich v Secretary of State*, 506 Mich 561, 595 n 54; 957 NW2d 731 (2020).

Plaintiff's argument that he has standing to assert his claims because defendant owes him contractual duties under the Operating Agreement also lacks merit. Plaintiff asserts that the trial court erred when it held he was not a party to the Operating Agreement. As plaintiff points out, the first page of the Operating Agreement states: "This Operating Agreement ('the Agreement') dated as of August 17, 2020, by and among: (a) those persons executing a signature page attached hereto and listed on *Exhibit A*, as the Members; and Kevin Baker and Kris Krstovski, as the Managers." Plaintiff signed the Operating Agreement as both co-manager of JV and an authorized representative of K2. The Operating Agreement also confers obligations and duties on the managers.

Regardless, his status as a party, or not, to the Operating Agreement fails to save his claims from summary disposition. Plaintiff cites to Articles 5.4A and 5.4G, in support of his argument, but a review of each demonstrates only that the Operating Agreement imposed duties on JV's co-managers to act in the best interests of *the company*. Article 5.4A states:

> The Managers shall take all actions which may be necessary or appropriate (i) for the continuation of the Company's valid existence as a limited liability company under the Michigan Act and its qualification to do business in the State of Michigan, and (ii) for the acquisition, development, maintenance, preservation and operation of the Company Property in accordance with the provisions of this Agreement and applicable laws and regulations.

Under Article 5.4G:

> The Managers shall be under a fiduciary duty to conduct the affairs of the Company in the best interests of the Company and of the Members, including the safekeeping

-6-

and use of all Company funds and assets and the use thereof for the exclusive benefit of the Company.

Moreover, Article 5.13 states:

All property owned by the Company shall be owned by the Company as an entity and, insofar as permitted by applicable law, no Member or Manager shall have any ownership interest in any Company Property in its individual name or right and, each membership or other ownership interest in the Company shall be personal property for all purposes.

Plaintiff cites MCL 450.4404 as an "applicable law" incorporated into the Operating Agreement, but it is of no help to his standing argument because it states, in pertinent part: "A manager shall discharge the duties of manager in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner the manager reasonably believes to be *in the best interests of the limited liability company*." MCL 450.4404(1) (emphasis added).[3]

Accordingly, we affirm the trial court order granting defendant summary disposition of plaintiff's claims. Plaintiff lacks standing and is not the real party in interest to raise the claims asserted because the injuries alleged are derivative of those suffered by K2, JV, and the other related entities.[4]

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Thomas C. Cameron

---

[3] Plaintiff also cites MCL 450.4515(1) in support of his breach of fiduciary duty claim, but it is likewise unhelpful. It states, in pertinent part:

A *member* of a limited liability company may bring an action in the circuit court of the county in which the limited liability company's principal place of business or registered office is located to establish that acts of the managers or members in control of the limited liability company are illegal or fraudulent or constitute willfully unfair and oppressive conduct toward the limited liability company or the member. [MCL 450.4515(1) (emphasis added).]

Again, plaintiff is not a member of JV.

[4] Defendant asserts alternative grounds for affirmance which we decline to address.