AUTO CLUB GROUP INSURANCE COMPANY v BURCHELL

Docket No. 222555. Submitted June 6, 2001, at Lansing. Decided November 27, 2001. Approved for publication January 29, 2002, at 9:25 A.M.

Auto Club Group Insurance Company brought an action in the Washtenaw Circuit Court against Robert P. Burchell, Lori Abramson, and Wanda Easley, seeking a declaration that it had no duty to defend or to indemnify Burchell, who was insured by Auto Club under a homeowners' policy. Abramson and Easley had brought an action against Burchell and his brother, seeking damages for injuries allegedly suffered in a barroom brawl. Easley's deposition testimony in that action was that Burchell, a patron of the bar at which she worked as a bartender, hit her in the face when she insisted that Burchell leave the bar after he became unruly after he had been refused further service because "last call" had already been announced. Easley further indicated that as she was trying to escort Burchell from the bar, he had grabbed her, thrown her into some chairs and tables, and hit her while she was on the floor. Abramson's deposition testimony was that she was struck by someone when she tried to come to Easley's aid, that Burchell's brother had tried to shove a broken beer mug in her face, and that the brother had grabbed her and spun her into a metal light pole after the fight had spilled out of the bar. Burchell's deposition testimony was that Easley had struck him, that he had not touched either Easley or Abramson, and that if he had inadvertently touched either of them, it had been done in self-defense. The original complaint filed by Abramson and Easley included an allegation that the Burchells had with wilful, wanton, and malicious intent assaulted Abramson and Easley, and set forth claims sounding in assault and battery, negligence, and intentional infliction of mental distress. The first complaint included a further allegation that the Burchells "acted maliciously" and "with intentional disregard" of the rights of Abramson and Easley. After Auto Club commenced its declaratory judgment action, Abramson and Easley filed an amended complaint naming Auto Club as a party. Later, Abramson and Easley filed a third amended complaint in which they alleged negligence alone, doing away with the claims of assault and battery and any language about "intentional" actions on the part of the Burchells and alleging instead that the Burchells had offensively touched Abramson and

Easley. Auto Club moved for summary disposition on the basis that it was not obligated to defend or to indemnify Burchell because the bodily injuries suffered by Abramson and Easley were not the result of an "occurrence" within the meaning of the insurance policy at issue and that coverage for the injuries in question was excluded under the policy because the injuries were the intended or expected result of the insured's acts or omissions. The court, Timothy P. Connors, J., denied the motion for summary disposition. Auto Club appealed by leave granted.

The Court of Appeals *held*:

1. An insurer has the duty to defend an insured not only in actions in which meritorious claims have been made, but also in actions in which groundless, false, or fraudulent claims have been made as long as the allegations against the insured even arguably come within the policy coverage. As long as any of the claims that were pleaded fall within the scope of the coverage of the policy, the insurer has the duty to defend its insured, even if some of the claims that have been pleaded do not come within the scope of the coverage of the insurance policy.

2. The policy in question provides that Auto Club will pay any damages for which the insured is legally liable because of bodily injury caused by an occurrence covered by the policy and will defend any suit for those damages provided that they arise from an occurrence covered by the policy. The policy defines "occurrence" as an accident that results in bodily injury.

3. The policy in question also contains a provision that excludes from coverage bodily injuries resulting from an act or omission by the insured that was intended or could reasonably be expected to cause bodily injury, even if the injury caused is different than that which was intended or expected.

4. The "intended or expected" language bars coverage for injuries caused by an insured who has acted intentionally while being aware that harm was likely to result from the intentional conduct. Accordingly, the trial court erred in holding that the policy's exclusion of coverage for bodily injuries that were intended or expected requires that both an intentional act and an intentional injury be shown.

5. Regardless of whose deposition testimony is believed, there is no coverage under the policy. The testimony of Abramson and Easley, if believed, shows that Burchell either intended to cause injuries or should have reasonably expected that injuries would result from his actions. Despite the attempt in the third amended complaint to disguise the assault and battery claims as "negligent

touching," the nature of the substance of the claims remains unchanged.

6. Burchell's deposition testimony was that he had not inflicted the injuries on Abramson and Easley or that if he did so inadvertently as he tried to get out of the bar, he did so in self-defense. To the extent that Burchell denies any involvement with the injuries to Abramson and Easley, there is no coverage under the policy because of the transparent attempt again to disguise the underlying claims of assault and battery as claims of negligent touching. To the extent that Burchell claims than any injuries that he might have inflicted were in self-defense, there is no coverage under the policy because a claim of self-defense necessarily involves an intentional act in which injury to the other party is an intended or a reasonably expected result.

Reversed and remanded for entry of summary disposition for Auto Club.

INSURANCE — DUTY TO DEFEND.

An insurer has the duty to defend an insured not only in actions in which meritorious claims have been made, but also in actions in which groundless, false, or fraudulent claims have been made as long as the allegations against the insured even arguably come within the policy coverage; where any of the claims that were pleaded in the action against the insured fall within the scope of the coverage of the insurance policy, the insurer has the duty to defend its insured, even if some of the claims that have been pleaded are not within the scope of the coverage of the insurance policy.

*Lanctot, McCutcheon, Schoolmaster, Taylor & Hom* (by *Joseph K. Bachrach*) (*Gross, Nemeth & Silverman, P.L.C.*, by *Mary T. Nemeth*, of Counsel), for the plaintiff.

*Hooper, Hathaway, Price, Beuche & Wallace* (by *Mark R. Daane*), for Robert P. Burchell.

Before: HOOD, P.J., and WHITBECK and METER, JJ.

PER CURIAM. In this declaratory judgment action, plaintiff Auto Club Group Insurance Company sought a ruling that it did not owe a duty to continue to defend or indemnify its insured, Robert Burchell, in

an underlying civil action brought against Robert Burchell to recover for injuries sustained by third parties, defendants Lori Abramson and Wanda Easley, during a barroom brawl. Auto Club appeals by leave granted the order denying its motion for summary disposition. We reverse and remand.

I. BASIC FACTS AND PROCEDURAL HISTORY

A. OVERVIEW

The issues in this case involve the intentional acts exclusion in Auto Club's homeowners' insurance policy, as well as the policy definition of "occurrence." Also at issue is the "criminal acts" exclusion within the policy. An understanding of the facts of the underlying action is thus important in order to determine whether the actions of the insured, Robert Burchell, were intentional or reasonably expected, whether an occurrence took place in order to trigger Auto Club's duty to defend, and whether Robert Burchell's actions constituted criminal acts.

These issues arise out of an escalating barroom brawl in DeRosso's Pub, located in Iron County, Wisconsin, in mid-August of 1997. The parties' accounts of what happened at DeRosso's that evening vary significantly. We summarize the deposition testimony of the main participants below.

B. WANDA EASLEY

According to Easley's deposition testimony, she was working the night shift as a bartender at DeRosso's, a topless bar, on the night of the incident. Around 2:15 A.M., Easley turned the music down and

called "last call." Easley served everyone their last drinks and began doing the dishes. Ten minutes after Easley had served the last round, a patron, later identified as Robert Burchell, began asking her for another drink. Easley refused and explained to him that it was 2:25 A.M., that she was done, and that "[w]e have to go, you know."

Easley turned around to put some glasses down after washing them and looked into the large mirror located behind the bar. She saw Robert Burchell reach over the bar, grab a bottle of alcohol, and start "chugging off it." Easley was "shocked"; she turned around, grabbed the bottle out of Robert Burchell's hand, and asked him "who he thought he was." Robert Burchell replied, "F—you, bitch," and Easley said, "I don't need this" and "you've got to go . . . you've got to go now." Robert Burchell then "railed off and nailed" Easley in the face "full fisted."

Easley jumped over the bar, grabbed Robert Burchell by the back of the pants and led him toward the front door. Robert Burchell then turned around, grabbed Easley, and "whipped" her over "like a sack of potatoes," throwing her into chairs and tables. Easley was on the floor and struggled to get up by kicking, punching, and pushing, while Robert Burchell hit her and "waled" on her.

A group of people pulled Robert Burchell off Easley; as a group they were able to escort Robert Burchell out the front door of the bar. At the same time, another man later identified as Patrick Burchell, brother of Robert Burchell, started to hit Easley. Easley was able to block Patrick Burchell from hitting her, but he then grabbed his beer mug and started to swing it at Lori Abramson, a bar patron. Easley

grabbed the mug out of Patrick Burchell's hand and started to go behind the bar to call the police, but Patrick Burchell grabbed the beer mug and again attempted to swing it at Abramson. Easley believed that he intended to break the mug and then use it to cut Abramson. Patrick Burchell slammed the mug into the countertop of the bar, cracking the shellac finish. Easley again grabbed the mug out of his hand, and the crowd pushed both of the Burchells out the door just as the police were arriving. As the police arrived, Robert Burchell turned around and hit Easley again in the face, right in front of a police officer. The officer handcuffed Robert Burchell. Patrick Burchell then swung Abramson up against a utility pole, and another officer handcuffed him. The police then took both Robert and Patrick Burchell away. As a result of Robert Burchell's actions, Easley sustained bruises from head to toe, an injured hip, and a contused toe and has developed a twitch in her left eye.

### C. LORI ABRAMSON

According to Lori Abramson's deposition testimony, she was at DeRosso's Pub on the night of the fight and was severely injured. She suffers from facial injuries, neck injuries, and lower spine injuries and has nerve damage to both legs. Abramson was sitting at the end of the bar, talking to a friend, and saw Easley escorting Robert Burchell out. Abramson did not know the Burchells; she had noticed that they had come into the bar late in the night and overheard them demanding another round of drinks. She also overheard Easley saying "sorry" and "last call was 15 minutes ago" and that "everybody had to leave." Specifically, Abramson remembered Easley turning down

the music and yelling "last call for alcohol." Soon after, she noticed Easley escorting Robert Burchell out. As Easley and Burchell approached the front door, one of the Burchells—Abramson was not sure which one—picked Easley up and "body slammed" her onto a table. It appeared to Abramson as though the man was "picking her [Easley] up and tossing her out of the way." At that point, Abramson jumped off her bar stool and went to assist Easley. "Immediately there following, the bar erupted into a big bar brawl." Abramson tried to pull Easley out of the situation, but the next thing she knew, she was grabbed and pushed up against the wall.

According to Abramson, someone struck her while she was inside the bar, although she did not know who; there were "hands and fists flying everywhere." Abramson did see Patrick Burchell shatter his beer mug on the bar, taking a "huge chunk of poly-urethane" out of the bar countertop, and then try to shove the broken mug into her face. The Burchell brothers and their three or four friends were fighting Abramson, Easley, and the other customers. Finally, everybody "pushed out the front door," and three police officers arrived. Patrick Burchell then grabbed Abramson and spun her into a metal streetlight pole, although she could not remember actually hitting the pole. Abramson hit the pole, striking her cheek, and then "dropped" and rolled off to the side. Abramson then went home and slept for a few hours. When Abramson awoke, she was covered in black bruises and her left leg was swollen almost to twice its normal size. Abramson went to the emergency room, and a doctor later diagnosed her with internal bleeding, the result of being slammed against the steel pole.

Abramson, a bartender by trade, testified that in her opinion the problem was that both the Burchells had had too much alcohol, having been at a wedding rehearsal dinner before they arrived at the bar, and that the brawl would have never happened if they had not been consuming too much alcohol.

### D. ROBERT BURCHELL

According to Robert Burchell's testimony, he was charged with assault and battery for the brawl that occurred at DeRosso's Pub. Robert Burchell had been to a rehearsal dinner earlier that evening because his sister was getting married. At the dinner, he drank scotch, wine, and an after-dinner drink of some type. Later, Robert Burchell went to the Horse's Corral, drank beer and played pool with his brother Patrick Burchell and his uncle Paul. The three then went to Mac's Bar and had a beer. On the way to still another bar, the topless entertainment at DeRosso's Pub "caught [their] eye," and they entered. Robert Burchell then had a beer at DeRosso's. It was about 1:45 A.M. because they "weren't in DeRosso's very long before the bartender (Easley) yelled "last call," and Robert Burchell thought she yelled that at about 2:15 A.M. After the bartender called "last call," Robert Burchell, his brother Patrick Burchell, and his uncle Paul then "stood up from" their table. Paul and Patrick Burchell wanted to leave, but Robert Burchell wanted them to stay and have one more beer. Finally, the trio decided that Paul and Patrick Burchell would go get the car, Robert Burchell could have one more beer, and they would pick him up. Robert Burchell stood at the bar waiting for Easley to finish telling a story to other customers. Easley was having a "big time" with

the other customers, and despite the fact that Robert Burchell was standing there "patiently" waiting for her to look at him, she did not. Meanwhile, Patrick Burchell reentered the bar and stood by the door. Patrick Burchell motioned to Robert Burchell and said, "Come on. Let's go." At that point, Robert Burchell grabbed an empty bottle from the bar by the neck, held it upside down, pointed to the label and motioned his brother to "just have one beer with" him because he "just wanted to spend more time with him." Robert Burchell was "trying hard to encourage everybody to stay a little longer." By Robert Burchell's own estimation, he was not actually "stumbling" drunk at that point, but he would not have driven a car.

As Robert Burchell lifted the empty bottle to show his brother, Easley suddenly swung around, grabbed it out of his hand, and "ripped [him] up and down with her comments." According to Robert Burchell, Easley was "foulmouthed right from the beginning," the "obscenities and the language that came out of her was—it was curdling," and she was "rabid." Robert Burchell simply ignored Easley until she started "cursing" him, at which point he cursed back. According to Robert Burchell he did "lay into her because she was—she was rude" so he "ripped her a little bit and turned to walk out the door." On his way to the door, Robert Burchell was grabbed from behind. Easley dived over the bar on top of him, three people grabbed him, and he was on his face in front of the bar counter. Robert Burchell "curled up on the floor" on his knees and waited for what he thought was going to be "a kind of frenzy." It seemed like "an eternity" that he was on the floor being kicked and hit.

Then, the panic "set in" and he "took everything [he] had" and sprinted as hard as he could for the door with his elbows out away from his body in a rocking motion, just like running with a football—"[i]n fact, it felt just like football." As he ran, Robert Burchell "pulled people with [him] as [he] went." Robert Burchell did not know what his brother Patrick Burchell was doing at the time and denied pushing, choking, hitting, dragging, or pulling either Easley or Abramson. In fact, according to Robert Burchell, he did not even touch either woman.

After the fight, police officers escorted Robert Burchell to the car and handcuffed him. As a result of the fight, Robert Burchell was bruised on both arms "from the guys that grabbed" him, although he never saw who they were. Robert Burchell also suffered a bruised eye and was hit in the chin and the head.

### E. THE COMPLAINTS

The original complaint filed by Abramson and Easley alleged that Patrick and Robert Burchell "proceeded to assault and batter" them, "did intentionally assault and batter the Plaintiffs by pushing, choking, hitting, holding, dragging, pulling, striking, and otherwise offensively touching the Plaintiffs," that "the above was done with willful, wanton, and malicious intention to severely harm and maim the Plaintiffs," and that, as a direct and proximate result of the Burchells' actions, they suffered several severe injuries. The original complaint also alleged negligence in count II, which incorporated by reference all previous paragraphs and wording, alleged intentional infliction of emotional distress in count III, and sought punitive damages in count IV. Additionally, the complaint

alleged that the Burchells "acted maliciously toward the Plaintiffs and with an intentional disregard to [sic] their rights with full knowledge that Plaintiffs' rights were being disregarded."

After Auto Club sought declaratory relief on the ground that it had no duty to defend or indemnify because of an intentional acts exclusion and a criminal acts exclusion, Abramson and Easley filed a second amended complaint to name Auto Club as a party to the action. Abramson and Easley then filed a third amended complaint that was significantly different from the first. In that complaint, Abramson and Easley alleged only negligence and did away with the assault and battery claims and any language about "intentional" actions on the part of the Burchells. The third amended complaint alleged only that the Burchells had "proceeded to touch" Abramson and Easley and that they "did touch the Plaintiffs by offensively touching the Plaintiffs." However, the third amended complaint still alleged the identical severe injuries that were alleged in the first complaint.

#### F. THE TRIAL COURT'S OPINION

In its opinion and order denying declaratory relief, the trial court reasoned that the duty of an insurance company to defend an insured extends to allegations that " 'even arguably come within the policy,' " quoting *Allstate Ins Co v Freeman*.[1] The trial court relied on the rule that a court should look beyond the nomenclature of the underlying claim to the basis of

---

[1] *Allstate Ins Co v Freeman*, 432 Mich 656, 662; 443 NW2d 734 (1989).

the injury to determine whether coverage exists, cit-
ing *Freeman*.[2] The trial court also reasoned that the
burden is on the insurer to show that an exclusion
applies, citing *Michigan Mut Liability Co v Fergu-
son*.[3] Notably, the trial court stated that under an
exclusionary provision such as the one found in this
policy, " 'the actual injury—and not merely the act
which caused the injury—must have been caused
intentionally in order for the exclusion to be opera-
tive,' " quoting *State Farm Fire & Casualty Co v
Groshek*.[4] The trial court then found that an "acci-
dent" had occurred within the meaning of the policy,
held that "it is possible that Mr. Burchell's actions
were unintentional, simply negligent, or that he acted
in self-defense," and held, therefore, that there was a
"possibility that the injuries alleged would be covered
by Auto Club's policy and that the intentional acts
exclusion would not apply." The trial court therefore
denied declaratory relief to Auto Club.

## II. STANDARD OF REVIEW

Review of a motion for summary disposition is de
novo.[5] A motion under MCR 2.116(C)(10) tests the
factual basis underlying the plaintiff's claim. This
Court's task is to review the record evidence and all
reasonable inferences drawn from it and decide

---

[2] *Id.* at 662-663.

[3] *Michigan Mut Liability Co v Ferguson*, 15 Mich App 298; 166 NW2d
525 (1968).

[4] *State Farm Fire & Casualty Co v Groshek*, 161 Mich App 703, 707;
411 NW2d 480 (1987).

[5] *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727
(1996), citing *Babula v Robertson*, 212 Mich App 45, 48; 536 NW2d 834
(1995).

whether a genuine issue regarding any material fact exists to warrant a trial.[6]

### III. LIABILITY UNDER THE POLICY

#### A. THE PARTIES' THEORIES

Auto Club argues that the injuries resulting from the fight do not constitute an "occurrence" within the meaning of the policy and, as a matter of law, coverage is not triggered. Additionally, Auto Club argues that the policy's exclusion of coverage for injuries resulting from the insured's intentional acts, or those injuries that could have been reasonably expected, bars recovery. Thus, Auto Club asserts that, because of one or both of these policy provisions, it has no duty to continue to defend its insured, Robert Burchell, in the underlying action and the trial court should have granted summary disposition.

Robert Burchell denies having touched Abramson or Easley. Alternatively, he argues that if he inadvertently touched them, he was merely trying to defend himself. Robert Burchell argues that because the underlying complaint alleged negligence, Auto Club had a duty to defend.

#### B. THE DUTY TO DEFEND

It is well established that an insurer has a duty to defend an insured and that such duty "is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured *even arguably*

---

[6] *Baker, supra* at 202, citing *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994).

come within the policy coverage."[7] Further, "[a]n insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy."[8] The trial court relied on these principles to deny Auto Club declaratory relief.

We believe, however, that the trial court missed the point of the correlative rule: if no theories of recovery fall within the policy, an insurer does not have a duty to defend.[9] Here, when we examine the substance of the underlying tort complaint and the basis for the injuries, rather than simply the nomenclature in the complaint, it is clear that no insurance coverage exists.[10]

### C. THE POLICY PROVISIONS

#### (1) THE "OCCURRENCE" PREREQUISITE

The policy covers damages and claims for bodily injury resulting from an "occurrence." The policy defines an "occurrence" as an "accident":

> We will pay damages for which an insured person is legally liable because of bodily injury . . . caused by an

---

[7] *Detroit Edison Co v Michigan Mut Ins Co*, 102 Mich App 136, 142; 301 NW2d 832 (1980) (emphasis in the original).

[8] *Id.*, citing *Dochod v Central Mut Ins Co*, 81 Mich App 63; 264 NW2d 122 (1978).

[9] See *American Bumper & Mfg Co v Hartford Fire Ins Co*, 452 Mich 440, 450; 550 NW2d 475 (1996), citing *Protective Nat'l Ins Co of Omaha v City of Woodhaven*, 438 Mich 154, 159; 476 NW2d 374 (1991).

[10] See *State Farm Fire & Casualty Co v Johnson*, 187 Mich App 264, 268; 466 NW2d 287 (1990), *State Mut Ins Co v Russell*, 185 Mich App 521, 528; 462 NW2d 785 (1990), and *Tobin v Aetna Casualty & Surety Co*, 174 Mich App 516, 517-518; 436 NW2d 402 (1988).

> occurrence covered by this Policy. An occurrence means an accident . . . which results . . . in bodily injury.
>
> We will defend any suit . . . for these damages . . . . We will not defend . . . any suit unless it arises from an occurrence covered by this Policy.

Although the policy itself does not define "accident," the Michigan Supreme Court defined the term "accident" in *Frankenmuth Mut Ins Co v Masters*[11] as " 'an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected.' " The Court reiterated that same definition in *Nabozny v Burkhardt*.[12]

(2) THE "INTENDED OR EXPECTED" EXCLUSION

Additionally, the policy contains the following "intended or reasonably expected injury" exclusion:

> [W]e will not cover: . . . .
>
> 5. bodily injury . . . resulting from an act or omission by an insured person which is intended or could reasonably be expected to cause bodily injury . . . This exclusion applies even if the bodily injury . . . is different from, or greater than, that which is expected or intended . . . .

In order for an injury to be "expected," it must be the " 'natural, foreseeable, expected, and anticipated result of an intentional act by the insured' " and the "intended or expected" language "bars coverage for injuries caused by an insured who acted intentionally despite his awareness that harm was likely to follow

---

[11] *Frankenmuth Mutual Ins Co v Masters*, 460 Mich 105, 114; 595 NW2d 832 (1999), quoting *Arco Industries Corp v American Motorists Ins Co*, 448 Mich 395, 404-405; 531 NW2d 168 (1995).

[12] *Nabozny v Burkhardt*, 461 Mich 471, 476-477; 606 NW2d 639 (2000).

from his conduct."[13] That same language bars recovery for damages that " 'reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions' " under *Masters*.[14]

Additionally, " 'when an insured's intentional actions create a direct risk of harm, there can be no liability coverage for *any* resulting damage or injury, despite the lack of an actual intent to damage or injure.' "[15] Under *Nabozny* the pertinent determination that must be made is " 'whether the consequences of the insured's intentional act "either were intended by the insured or reasonably should have been expected because of the direct risk of harm intentionally created by the insured's actions." ' "[16]

### D. APPLYING THE POLICY PROVISIONS

Abramson and Easley cannot avoid the implications of these rules regarding "intentional" conduct merely by pointing to language in the complaint that—somewhat disingenuously—characterized Burchell's participation in the fight as negligent touching.[17] For this

---

[13] See *Auto-Owners Ins. Co v Harrington*, 455 Mich 377, 383-384; 565 NW2d 839 (1997).

[14] *Masters, supra* at 115, quoting *Auto Club Group Ins Co v Marzonie*, 447 Mich 624, 648-649; 527 NW2d 760 (1994) (GRIFFIN, J.).

[15] *Masters, supra* at 116, quoting *Marzonie, supra* at 649 (emphasis in original). See also *Allstate Ins Co v Miller (After Remand)*, 226 Mich App 574, 583; 575 NW2d 11 (1997).

[16] *Nabozny, supra* at 480, quoting *Masters, supra* at 115, quoting *Marzonie, supra* at 648-649.

[17] See *Tobin, supra* at 518-519 ("There is no duty to defend or provide coverage where a complaint is merely an attempt to trigger insurance coverage by characterizing allegations of tortious conduct as 'negligent' activity. . . . The duty to defend is not limited by the precise language of the pleadings.").

reason, the trial court's holding that the policy's bodily injury exclusion requires both an intentional act and an intentional injury was simply incorrect; the policy broadly excludes coverage for bodily injury that was "expected or intended."[18]

Regardless of whose version of events is believed, we conclude that there is no coverage under Auto Club's policy. If Abramson and Easley's version of events, described in detail during depositions and never modified or recanted, is to be believed, Burchell either intended to cause injuries or such injuries could have reasonably been expected. Despite Abramson and Easley's obvious attempt in the third amended complaint to disguise their assault and battery claims as "negligent touching," the nature of the substance of their claims, and the severity of the injuries alleged, remains unchanged.

If Robert Burchell's version of events is to be believed, he never touched either Abramson or Easley and, accordingly, he did not injure them. Although on appeal Robert Burchell does not explain his version of events other than pointing out that he denied the charges brought against him in the related criminal case, the trial court record demonstrates his alternative positions. At his deposition, Robert Burchell testified that he did not touch Abramson or Easley, let alone injure them. However, in response to Auto Club's motion for summary disposition, Robert Burchell "vigorously denie[d]" injuring Abramson and Easley, but then characterized his actions as "simply

---

[18] See *Groshek, supra* at 707 (policy excluded coverage for injury caused intentionally).

an attempt to get out of the bar and avoid taking a beating" and argued that

> [i]f he inadvertently came into [contact] with either Ms. Abramson or Ms. Easley while elbowing his way out of the bar, that contact could not be described as either an assault or a battery since both are intent crimes and the inadvertent contact and injury could be determined by a jury to be violation of a duty of reasonable care.

Robert Burchell argued that Auto Club had a duty to defend in case the jury found "a self-defense verdict," a "negligence verdict" or "no cause." The trial court agreed with Robert Burchell, basing its order in part on the possibility that a jury could find that he acted in self-defense.

Under either of Robert Burchell's theories—that he was not the one who inflicted the injuries or, if he did, he did so only in self-defense—there is no coverage under Auto Club's policy. In *Smorch v Auto Club Group Ins Co*,[19] the plaintiff alleged that her boyfriend, the insured, "negligently" assaulted and battered her. This Court rejected the plaintiff's "transparent attempt" to disguise her claim in terms of negligence in order to avoid the insurance policy's intentional acts exclusion.[20] The insured denied any involvement in the incident, just as Burchell denies ever touching Abramson and Easley in this case. In *Smorch*, this Court held that Auto Club had no duty to defend, despite the insured's denial of involvement in the incident. The Court reasoned that under any version of events, there could be no coverage:

---

[19] *Smorch v Auto Club Group Ins Co*, 179 Mich App 125, 127; 445 NW2d 192 (1989).

[20] *Id.* at 129.

There is no duty to defend or provide coverage where the complaint is a transparent attempt to trigger insurance coverage by characterizing allegations of tortious conduct under the guise of "negligent" activities. *Aetna Casualty & Surety Co v Sprague*, 163 Mich App 650, 654; 415 NW2d 230 (1987); *Linebaugh [v Berdish*, 144 Mich App 750, 763; 376 NW2d 400 (1985)]. Assault and battery are intentional acts. *People v Bryant*, 80 Mich App 428, 433; 264 NW2d 13 (1978).

We conclude that the complaint filed against plaintiff was a transparent attempt to characterize tortious conduct as negligence. Plaintiff's girl friend is suing for injuries sustained in an alleged assault and battery. These injuries are not covered by Auto Club's homeowner's insurance policy because they did not result from an accident but were, as a matter of law, either intended or expected by the insured.

Plaintiff claims that his girl friend's injuries were the result of a beating at someone else's hands. He argues that because he denies the incident occurred, he is entitled to insurance defense. This argument is without merit.

In a case where an insured is sued for tortious conduct and argues self-defense, there is no duty to defend. *Century Mutual Ins Co v Paddock*, 168 Mich App 747, 753; 425 NW2d 214 (1988). The rationale behind this is that, regardless of the jury's finding on the self-defense issue, the insurer would be under no duty to pay on behalf of the insured. Where the jury accepted the insured's version of self-defense, there would be no liability on the part of the insured. If the jury rejected the insured's version of self-defense, the insured would have committed an intentional act not covered by the policy. *Id.* Where neither outcome leads to a duty of the insurer to pay on behalf of the insured, we will refuse to impose on the insurer a duty to defend. *Id.*, pp 753-754.

Likewise, in the instant case, should the jury believe plaintiff's version that the incident did not occur, neither plaintiff nor Auto Club would be liable for damages. Should the jury reject plaintiff's version, he would have committed

an intentional act not covered by the policy. In either case,
Auto Club is not liable and, thus, has no duty to defend.[21]

Further, the opinion of the Michigan Supreme
Court in *Harrington* provided that "[t]o except injuri-
ous action taken in self-defense from the intentional-
acts exclusion would impermissibly disregard the
clear language of the exclusion in the contract
between insurer and insured."[22] The Court also made
the following pointed observation: "Indeed, while the
Harringtons argue that acts taken in self-defense are
not 'intentional' because they are reactionary and a
justifiable response to unwarranted aggression, this
reasoning fails because the exclusion does not qualify
the injuries excluded from coverage with terms such
as 'wrongful' or 'unjustified.' "[23] Similarly, no such
qualifying language exists in the policy at issue in this
case, and no exception to the exclusion should be
made for self-defense where the plain language pro-
vides no exception. Simply put, Burchell cannot have
it both ways. Either he did not act intentionally and
did not intend or expect the consequences of his
actions, or he did act intentionally, in self-defense,
and should have intended or expected the conse-
quences of his actions. This incompatibility is best
explained in *Century Mut Ins Co v Paddock*,[24] where
the insureds sought coverage after causing injuries

---

[21] *Id.* at 128-130; see also *Russell, supra* at 527-528 (allegations of negli-
gence contained in the amended complaint were nothing more than a
transparent attempt by the defendant to trigger insurance coverage by
characterizing intentionally tortious conduct as negligent activity; thus,
the plaintiff had no duty to defend or indemnify against them).

[22] *Harrington, supra* at 385.

[23] *Id.*

[24] *Century Mut Ins Co v Paddock*, 168 Mich App 747, 753-754; 425
NW2d 214 (1988).

during their participation in a bar fight. The policy in effect covered bodily injury or property damage caused by an "occurrence," which was defined as an "accident," and excluded from coverage " 'liability . . . caused intentionally by or at the direction of any insured.' "[25] Like Robert Burchell in this case, the insureds in *Century Mut* asserted that they acted in self-defense and that therefore their actions could not be considered voluntary and the exclusion did not apply. This Court disagreed:

> Even giving the Paddocks the benefit of the doubt as to the necessity of kicking the Imbrunones in self-defense, we find that the policy exclusion bars coverage. In *Frankenmuth Mutual Ins Co* [*v Beyer*, 153 Mich App 118; 395 NW2d 36 (1986)], this Court held that exclusionary language identical to that in the Century Mutual policy did not obligate the insurer to defend an insured who committed a battery in alleged self-defense. This Court reasoned that regardless of the jury's finding on the self-defense issue, the insurer was under no duty to pay on behalf of the insured. Where the jury accepted the insured's version of the incident, there would be no liability on the part of the insured. If the jury rejected the insured's defense, the insured would have committed an intentional act not covered by the policy. Where neither outcome led to a duty of the insurer to pay on behalf of the insured, this Court refused to impose on the insurer a duty to defend. In the instant case, Century Mutual's situation is identical to that of the insurer in *Frankenmuth Mutual Ins Co*. Regardless of whether a trier of fact accepts the Paddocks' contention that they entered the fight in self-defense, Century Mutual will have no obligation to pay damages on their behalf. Accordingly, we can impose on Century Mutual no duty to defend.[26]

---

[25] *Id.* at 750.

[26]  *Id.* at 753-754.

Additionally, this Court noted in *Century Mut* that "[r]equiring Century Mutual to provide insurance coverage in the instant case would encourage barroom brawlers everywhere to cry 'He hit me first!' and run for insurance cover to defray the expenses of their actions," adding that "[t]his is surely not in the interest of public policy in a world where it is rarely clear who threw the first punch."[27] In this case, where the exclusion broadly encompasses injuries "intended" or "reasonably expected," it is even clearer that coverage would not be provided.[28]

Because we find that the trial court should have granted summary disposition to Auto Club on the basis of either the "occurrence" prerequisite or the "intended or expected" exclusion of the policy, we need not address Auto Club's argument that the policy's criminal acts exclusion also operates to bar coverage.

Reversed and remanded for entry of summary disposition in favor of Auto Club. We do not retain jurisdiction.

---

[27] *Id.* at 754.

[28] See *Yother v McCrimmon*, 147 Mich App 130, 134; 383 NW2d 126 (1985) (insurance policy excluded injuries that were either expected or intended, thus the insured's conduct was outside the scope of coverage and summary disposition was appropriate notwithstanding the insured's claim that he acted in self-defense).