# STATE OF MICHIGAN

# COURT OF APPEALS

ELISSA KOOPMANS SCHWARTZ,

Plaintiff-Appellant,

v

REAL ESTATE ONE, INC., CHRISTOPHER LEE, and JAN BRITTON,

Defendants-Appellees.

UNPUBLISHED
January 26, 2017

No. 328727
Oakland Circuit Court
LC No. 2015-146323-NM

Before: BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

In this dispute arising from a real estate listing agreement, plaintiff Elissa Koopmans Schwartz appeals as of right the trial court's order granting summary disposition to defendants Real Estate One, Inc. (REO), Christopher Lee, and Jan Britton pursuant to MCR 2.116(C)(8) (failure to state a claim). Because plaintiff's pleadings allege a prima facie case, and we must accept as true all well-pleaded facts, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2013, plaintiff owned a home located at 644 Rudgate Road, in Bloomfield Hills.[1] On April 11, 2013, plaintiff as seller and REO as broker, with Lee as "Licensee" for REO, executed a contract titled "Exclusive Right to Sell or Lease Contract" (Listing Agreement) with regard to plaintiff's home. The Listing Agreement was for a one-year term. Lee represented that a sales price of $1,570,000 for plaintiff's property was reasonable, and that the fair market monthly rental rate for the premises was $8,000. Defendants set forth those figures in the Listing Agreement at the time Lee presented it to plaintiff for execution. Plaintiff struck from the Listing Agreement both the offer to lease the property for a price of $8,000 a month and the paragraph regarding compensation in the event of a lease at the time she signed it. She struck

---

[1] Because we are tasked with determining whether plaintiff's case should have survived a motion for summary disposition under MCR 2.116(C)(8), all facts for purposes of this appeal are gleaned from the allegations set forth in plaintiff's amended complaint.

-1-

those terms because she did not agree to lease the premises at the "Stated Rental FMV" of $8,000 per month. All other language in the Listing Agreement pertaining to defendants leasing the premises remained intact.

The Listing Agreement contained two other provisions relevant to this case. The first provided, "In consideration of the agreement of Broker to market the property and to use the best efforts to find a buyer, the Seller grants the Broker the exclusive right to sell or lease the Property from 04/11/13 to 11:59 P.M. on 04/11/14." The second provided as follows:

> **ENTIRE AGREEMENT:** Seller and Broker agree that there are no agreements, representations, statements or understandings which have been relied upon by the parties which are not stated in this Contract. This Contract is the final and complete agreement of the parties with regard to subject matter of the Contract. All prior written and oral negotiations, representations, agreements, and warranties related to or pertaining to this Contract and the subject matter of this Contract are superseded by and merged into this Contract. Seller and Broker agree that this Contract may not be altered, amended, modified or otherwise changed, except by a duly executed written agreement between the parties.

In addition, a Disclosure Regarding Real Estate Agency Relationships was executed for the property, signed by both Lee as "Licensee" and plaintiff as seller, and disclosing Lee to be a "Seller's Agent." The disclosure listed the statutory duties a "real estate broker or real estate sales person acting pursuant to a service provision agreement owes, at a minimum," to plaintiff as the client, which are also set forth in MCL 339.2512d(2).

In the latter half of October 2013, Lee telephoned plaintiff to discuss listing the property for sale and indicated that the sale price needed to be reduced to at least $1,399,900, to which plaintiff orally agreed. Plaintiff informed Lee that a rental listing would soon be needed. Lee did not indicate that the fair rental rate for the property was higher than $8,000. Near the end of October 2013, the property was listed for sale on the multiple listing service (MLS).

On November 3, 2013, plaintiff sent an e-mail to Lee instructing him to add a rental listing for the property to the MLS on November 4. According to plaintiff, the reason for the instruction was that her existing tenants were vacating the property on November 10 and she would be entitled under the lease to accelerated rent, but only if she attempted to mitigate her damages by listing the property for rent.

In a telephone conversation on November 5, plaintiff asked Lee if he had added the rental listing, and Lee indicated that he had not because he had communicated with plaintiff's counsel, Jeff Dworin, who stated that plaintiff had relinquished her right to accelerated rent in a settlement agreement with the tenants. Plaintiff explained to Lee that she had not relinquished her right to accelerated rent, that the property had to be rented, and that defendants needed to immediately add the rental listing to the MLS. Plaintiff advised that she understood that the commission would be equal to one month's rent. Lee stated that he would add the rental listing. Following the November 5 telephone conversation, plaintiff sent an e-mail to Lee indicating her hope that defendants had added the rental listing.

In December 2013, plaintiff received an offer to purchase the property at a price significantly lower than the already lowered price. Plaintiff instructed Lee to submit a counteroffer which was accepted, but was approximately $400,000 lower than plaintiff's cost for the property. There were contingencies tied to the offer, some of which remained open for more than one month.

On January 3, 2014, Lee presented plaintiff with an addendum and instructed her to sign it because the prospective purchasers needed more time to acquire a mortgage. Plaintiff signed the addendum, extending the time for the purchasers to obtain the mortgage until February 10, 2014. Later in January, plaintiff telephoned Lee because she had seen a moving van in front of the home two doors down from the property (591 Rudgate) and wondered if it had been sold. Lee accessed the listing and determined it had been listed for rent in the latter half of October 2013 and had been rented for $13,500 per month. Plaintiff could not understand why the smaller, older house with a smaller lot and a less private backyard had rented for $13,500 and expressed her bewilderment to Lee as to why the tenants would not have looked at her property when the rent would have been $5,000 less. Lee remained silent.

The purchasers obtained a mortgage later in January 2014, and closing on the property took place on January 24, 2014. Lee called plaintiff on February 1, at which time she again mentioned her "bewilderment, disappointment and lack of understanding" about why the tenants at 591 Rudgate would not have considered renting her property. Again, Lee did not respond. Lee's failure to respond prompted plaintiff to ask him whether he had actually listed the property for rent as she had instructed. Lee admitted that he had not done so. When she asked why, he again stated he had communicated with her counsel prior to November 5, who had indicated that plaintiff had relinquished her right to accelerated rent in the settlement agreement with her tenants. Plaintiff reminded Lee that she had told him during the November 5 telephone conversation that she had not relinquished her right to accelerated rent. Regardless, she had not given him permission to evaluate or second guess her reasons for asking him to list her house for rent in November.

On March 5, 2014, plaintiff e-mailed Lee, asking him to file a claim with his insurance carrier for the lost accelerated rent, amounting to $18,500.[2] Defendants' insurance agent, Vincent Catania, sent a letter dated April 29, 2014 to plaintiff denying liability. The stated reason for denying her claim was again attributed to the alleged conversation Lee had with plaintiff's attorney on November 5. Plaintiff contacted Dworin in early May to ask whether he had in fact communicated with Lee in November, 2013. Dworin told plaintiff that he had never communicated with any of the defendants about plaintiff's settlement agreement.

Plaintiff wrote a letter to Catania on May 6, 2014, letting him know that the statements in his letter denying liability were false because Dworin informed her that he had never spoken to Lee about the settlement agreement. Catania sent plaintiff a letter dated June 24, 2014, again

---

[2] According to her amended complaint, this is the amount of accelerated rent that accrued from November 11, 2013, the first day after her existing tenants vacated the premises, and January 23, 2014, the last full day that plaintiff owned the premises.

denying liability, this time because plaintiff had crossed out the language in the Listing Agreement regarding the property being leased for $8,000 per month and the commission terms based on the lease for that amount, and because the language in paragraph 24 stated that the contract could not be amended, modified or altered except by written agreement between the parties.

In the meantime, plaintiff was informed by two Oakland County real estate experts that the fair market monthly rental rate for her property was actually $15,000 unfurnished and more than $15,000 furnished. Both experts opined "that a licensed real estate professional working in Oakland County would know or could easily determine" the property's fair market monthly rental rate.

On March 31, 2015, plaintiff filed a multi-count complaint against defendants alleging breach of fiduciary duty, breach of contract, fraud, and violation of the Consumer Protection Act. Plaintiff then filed an amended complaint adding claims of negligence and professional negligence. On May 22, 2015, defendants filed a motion for summary disposition under MCR 2.116(C)(8) seeking relief based on their contention that defendants never agreed to list the property for lease and never made a representation regarding the fair market rental value of the property. In their supporting brief, defendants also argued that the trial court should dismiss the Consumer Protection Act and fraud claims under MCR 2.116(C)(10) (no genuine issue of material fact). In response, plaintiff withdrew her Consumer Protection Act claim, but otherwise opposed the motion.

At the hearing on defendants' motion for summary disposition, plaintiff requested sanctions against defendants' counsel for allegedly falsely signing and filing his praecipe because it stated that he had spoken with plaintiff on May 22 prior to filing the motion for summary disposition.[3] The trial court did not address plaintiff's sanctions request, granted defendants summary disposition under (C)(8), and declined to provide any analysis under (C)(10).

## II. ANALYSIS

### A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Auto Club Group Ins Co v Burchell*, 249 Mich App 468, 479; 642 NW2d 406 (2002). A trial court may not make factual findings when deciding a summary disposition motion. *Featherly v Teledyne Indus, Inc*, 194 Mich App 352, 357; 486 NW2d 361 (1992). "A motion brought under

_____

[3] Oakland Circuit Court Local Rule 2.119 requires that a motion praecipe must be filed at least 7 days before a motion hearing along with a certification by the attorney of record (or by the party in propria persona) certifying that he or she has made personal contact with the party at issue in the motion requesting concurrence in the relief sought, or at least made reasonable and diligent attempts to contact counsel requesting concurrence in the relief sought with the motion.

(C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings." *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010).

> When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). Summary disposition on the basis of subrule (C)(8) should be granted only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

> . . . A complaint must contain "[a] statement of facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend . . . ." MCR 2.111(B)(1). "[T]he primary function of a pleading in Michigan is to give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993), citing 1 Martin, Dean & Webster, Michigan Court Rules Practice, p 186. Our Supreme Court has characterized MCR 2.111(B)(1) as consistent with a "notice pleading environment . . . ." *Roberts v Mecosta Co Gen Hosp* (*After Remand*), 470 Mich 679, 700 n 17; 684 NW2d 711 (2004). If a party fails to plead facts with sufficient detail, the court should permit "the filing of an amended complaint setting forth plaintiff's claims in more specific detail." *Rose v Wertheimer*, 11 Mich App 401, 407; 161 NW2d 406 (1968); see also MCR 2.116(I)(5). [*Id.* at 304-306 (alteration added).]

## B. BREACH OF FIDUCIARY DUTY

Plaintiff first argues that the trial court erred by dismissing her breach of fiduciary duty claims because she stated claims upon which relief can be granted. We agree. Under Michigan Law, a real estate broker has a fiduciary relationship with his or her clients. *Brotman v Roelofs*, 70 Mich App 719, 729; 246 NW2d 368 (1976). Duties of disclosure, care, loyalty and fidelity can arise either impliedly from the agent's position, or expressly from an agency contract in a listing agreement. *Id.*

Because of the Listing Agreement in this case, there is no question that defendants were in a fiduciary relationship with plaintiff and, therefore, owed her the duties of loyalty, fidelity, care, and disclosure. Plaintiff hired REO as her broker to sell the property and Britton and Lee were both licensed real estate agents employed by REO. The Listing Agreement provided that plaintiff as the seller had granted REO as the broker "the exclusive right to sell or lease the property" for an entire year. The amount of rent and commission terms in paragraphs 3 and 4(b)

were stricken. However, according to the terms of the Listing Agreement, the exclusive right to lease the property remained with REO.

In general, use of the disjunctive term "or" indicates a choice between two or more things, *AFSCME Council 25 v Wayne Co*, 292 Mich App 68, 92-93; 811 NW2d 4 (2011), but the popular use of "or" is "loose" and "frequently inaccurate," *Amerisure Ins Co v Plumb*, 282 Mich App 417, 428; 766 NW2d 18 (2009). Defendants have essentially conceded that were the lease terms not stricken by plaintiff, they would have listed the property for rent *and* sale. Therefore, although the contract uses the term "or," the decision to list the property for sale did not preclude listing the property for rent, as the two were not mutually exclusive. Accordingly, under the terms of the Listing Agreement, the exclusive right to list the property for rent—for a price and commission not yet negotiated by the parties—remained with REO.

In this case, plaintiff alleged that she made multiple requests, both oral and written, to defendants for them to add a rental listing to the property. Because the exclusive right to rent the property remained with REO and its agents, plaintiff stated a cause of action when she stated in paragraph 51 of her amended complaint that they violated their duty of loyalty and fidelity when they failed to add the rental listing. According to plaintiff, Lee told her on November 5, 2013 that he would list the property for rent, but he did not do so. Plaintiff also stated a cause of action when she claimed in paragraph 52 of her amended complaint that defendants violated a fiduciary duty by failing to disclose that they were refusing to add the rental listing.

In addition to these general fiduciary duties, plaintiff alleged breaches of defendants' statutory fiduciary duties as enumerated in MCL 339.2512d(2), which duties were also enumerated in a signed disclosure between plaintiff and defendants, as required by MCL 339.2517(2). Defendants do not argue that these obligations were not owed to plaintiff or that they were not violated. Instead, they argue that these violations cannot be rectified in a private action filed by plaintiff. Defendants are incorrect.

Defendants rely on *Claire-Ann Co v Christensen & Christensen Co*, 223 Mich App 25; 566 NW2d 4 (1997) for the premise that a cause of action cannot be based on the Occupational Code, MCL 339.101 *et seq.*, because the code contains an enforcement mechanism separate from the Court, that is, enforcement through MCL 339.601 *et seq.* ("article 6") which provides the forum for disputes regarding violation of duties imposed by the code. However the statute in *Claire-Ann* expressly stated that violations were subject to MCL 339.601. In *Claire-Ann*, the Court was called on to look at a violation of MCL 339.2512(j). *Id.*, 223 Mich App at 29. MCL 339.2512 begins, "A licensee who commits 1 or more of the following is subject to the penalties set forth in article 6." The reasoning in *Claire-Ann* was that there was nothing in article 6 that permitted private people to bring or intervene in the civil actions brought to enforce the provisions of the Occupational Code. *Id*. at 30. Thus, because the statute created a new right or duty unknown to the common law and provided the enforcement mechanism through article 6, there was not a private cause of action. *Id.* at 31.

Defendants' error comes from trying to apply this reasoning to MCL 339.2512d. Although MCL 339.2512(d) would be subsumed under the reasoning of *Claire-Ann*, MCL 339.2512d is a completely separate statute with none of the prefatory language discussed in *Claire-Ann*. Notably absent from MCL 339.2512d is any sort of administrative or enforcement

mechanism, let alone a comprehensive one, such as that found in MCL 339.2512 and analyzed in *Claire-Ann*.

Accordingly, defendants have failed to prove that there is a prohibition on a private cause of action for violations of these fiduciary duties, and the trial court erred in granting summary disposition on plaintiff's fiduciary duty claims for that reason.

## C. BREACH OF CONTRACT

Plaintiff also claims that the trial court erred by dismissing her breach of contract claims set forth in paragraphs 57 through 70 of her amended complaint, associated with defendants' failure to add a rental listing as instructed by plaintiff and later agreed upon by defendants. We agree. Defendants argue that there was no breach of contract because the contract was only for sale, not for lease. However, as was discussed above, the exclusive right to lease/rent the property remained with REO under the Listing Agreement and, therefore, the Listing Agreement was for sale *and* lease, although the price and commission terms were to be determined later. Here, plaintiff sent written and oral instructions to Lee to add a rental listing, and accepting as true and construing plaintiff's allegations in the light most favorable to her as the non-moving party, *Maiden*, 461 Mich at 119, Lee agreed to place the rental listing.

Defendants argue that because the Listing Agreement had an integration clause providing that it was the full agreement and that changes could only be made in writing, plaintiff could not reasonably rely on these oral modifications. Defendants are incorrect. The freedom to contract means that two parties can always agree to modify a written agreement orally. *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 372-373; 666 NW2d 251 (2003).

> The mutuality requirement is satisfied where a modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms of the original contract. In meeting this clear and convincing burden, a party advancing amendment must establish that the parties mutually intended to modify the *particular* original contract, including its restrictive amendment clauses such as written modification or anti-waiver clauses. [*Id.* at 373.]

Here, because plaintiff and Lee had previously agreed to change the sale price of the property through an oral modification, plaintiff had reason to believe that oral modifications to the contract were permissible. Thus, by claiming that she both wrote and spoke to Lee and received verbal confirmation that he would add the rental listing, plaintiff has stated a claim that there was a meeting of the minds.

> Upon proof of an express oral or written agreement, the mutuality requirement is clearly satisfied. This is because where the parties expressly modify their previous contract, rescission of the terms of the prior agreement is a necessary implication. By the clear expression of the parties, contradictory provisions in the prior agreement are *waived*. [*Id.* (citation omitted).]

Accordingly, plaintiff has stated a pursuable claim that the written modification provision was waived, and the oral contracts were required to be completed.

Defendants argue that with the integration clause, no parol evidence can be introduced to contradict the plain language of the written agreement. Defendants have forgotten that parol evidence only applies to evidence of agreements prior to or contemporaneous with the signing of a contract and do nothing to prevent evidence of agreements entered into after the agreement was executed because, again, parties never lose the freedom to contract. See *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998).

Defendants also assert that an oral modification to the Listing Agreement would violate the statute of frauds. The problem with defendants' argument is two-fold. First, it is premised on the idea that the original Listing Agreement did not include an obligation to list the property for lease which, as already discussed, it did. Therefore, the oral modification was only necessary for the rental price and commission. Second, defendants cite *Zurcher v Herveat*, 238 Mich App 267; 605 NW2d 329 (1999) for the proposition that if the original agreement is within the statute of frauds, any oral modification must also be in writing to be enforceable. However, what *Zurcher* held was that "[b]ecause the purchase agreement was required to be in writing under the statute of frauds, any modification or surrender of the purchase agreement also had to be in writing *or supported by consideration* in order to be enforceable." *Id.*, 238 Mich App at 299-300 (emphasis added). This Court then cited *Minor-Dietiker v Mary Jane Stores of Mich, Inc*, 2 Mich App 585, 590; 141 NW2d 342 (1966), for the premise that "consideration distinct from the underlying contract can suffice to make an oral modification to a lease enforceable." *Id.* at 300. Here, plaintiff was offering a commission for the rental listing and, therefore, new consideration distinct from the underlying contract that would make the oral modification of the Listing Agreement enforceable. Defendants assert that there was no commission, but plaintiff contended in her amended complaint that she said she would pay a commission of one month's rent, so plaintiff has stated a claim for purposes of the summary disposition motion.

Accordingly, the trial court erred when it dismissed plaintiff's breach of contract claim.

## D. FRAUD

Plaintiff next argues that the trial court erred by dismissing her fraud and silent fraud claims. Again, we agree. The elements of a claim for fraud are: " '(1) a material representation which is false; (2) known by defendant to be false, or made recklessly without knowledge of its truth or falsity; (3) that defendant intended plaintiff to rely upon the representation; (4) that, in fact, plaintiff acted in reliance upon it; and (5) thereby suffered injury[.]' " *McMullen v Joldersma*, 174 Mich App 207, 213; 435 NW2d 428 (1988), quoting *Jaffa v Shacket*, 114 Mich App 626, 640-641; 319 NW2d 604 (1982). "The false material representation needed to establish [silent] fraud may be satisfied by the failure to divulge a fact or facts the defendant has a duty to disclose." *Clement-Rowe v Mich Health Care Corp*, 212 Mich App 503, 508; 538 NW2d 20 (1995). To establish a claim of silent fraud, a plaintiff must prove that the defendant intended to induce the plaintiff to rely on a nondisclosure and that the defendant had an affirmative duty to disclose. *Id.*

As an initial matter, we note that defendants have only argued against plaintiff's fraud claim set forth in paragraph 72 of her amended complaint:

> Defendants committed common law fraud in that Defendants made an intentional representation of material fact that the fair market monthly rental rate was $8,000 (Stated Rental FMV) when they set forth in Paragraph 3 of the Listing Agreement that Seller agrees to "lease the Property for the sum of $8,000 per month."

However, plaintiff also alleged a count of silent fraud in paragraph 78, and an additional count of common law fraud for failure to add a rental listing in paragraph 80. Nonetheless, given the similarity of the arguments for common law fraud based on misrepresentation and silent fraud, both will be discussed.

Defendants provide no argument against plaintiff's claim that the trial court erred in granting summary disposition on her claim of common law fraud for failure to add the rental listing. Indeed, none of the allegations or arguments made before the trial court in support of summary disposition specifically addressed this claim. Accordingly, the trial court erred in granting summary disposition on the common law fraud claim regarding the rental listing because defendants failed to make any argument against it.

Regarding the common law fraud based on misrepresentation and silent fraud claims, defendant argues that both of plaintiff's claims fail for the same reason—there was no representation. Plaintiff alleges that defendants committed common law fraud when they intentionally represented that the fair market monthly rental rate of the property was $8,000 per month. Defendants claim that REO did not make a representation of material fact as a matter of law. They argue that because plaintiff crossed out the $8,000 language when she refused to rent the property with REO, it was not part of the Listing Agreement and, therefore, not a representation that was made during the course of the transaction. Defendants then argue that even if it were not crossed out, it was still not a representation because it was not a representation of present existing fact; rather, it was a contractual term to which plaintiff refused to agree. Defendants argue that, at most, the alleged statement was a representation of what the seller would agree to, but if it were construed as a fact, it was a fact the plaintiff knew to be false because she crossed it out, showing that she knew not to agree to it.

Accepting as true and construing plaintiff's allegations in the light most favorable to her, we hold that plaintiff has stated a claim that defendants made a representation regarding the fair market monthly rental value of her home. Plaintiff alleged that Lee represented to her that the fair market rental value was $8,000 per month. Defendants placed that figure in the blank provided for the monthly rental price in the Listing Agreement. Plaintiff's striking it out did not preclude it from being defendants' representation or constitute a withdrawal of defendants' representation. Plaintiff's act of striking the language showed that she was not in agreement with the contract term; it had nothing to do with the truth or falsity of defendants' representation, as plaintiff did not have the skills and knowledge to determine its truth at that time. The representation made by defendants remained, however.

Additionally, defendants concede that the contractual term could be construed as a representation of fact. People hire realtors to help them assess the value of their property in the market. According to the allegations in her amended complaint, plaintiff relied on defendants' knowledge of the market to determine whether to list the property for rent and for how much. How much the property could be rented for each month was an ascertainable fact that defendants had the specialized knowledge and skills to determine. Plaintiff hired REO for those skills and that knowledge. Defendants represented that the market would allow for a rent of $8,000 per month. Plaintiff alleged that she reasonably understood the $8,000 figure to be a present factual representation of the fair market rental value of the property, when in fact, the rental value was much higher, and as such, defendant's representations deprived her of rental opportunities at a higher rate. Plaintiff alleged in her amended complaint that, had defendant informed her of the actual fair market rental value, she would have chosen to rent the property, instead of selling it, for as long as it took the fair market sales value to reach approximately $1,600,000. She would have realized a monthly profit on the rental, and would not have had to sell her house at a $400,000 loss. Plaintiff further alleged that, had Lee told her that he was not going to add a rental listing, she would have had the opportunity in November 2013 to terminate the Listing Agreement and retain another real estate professional who would have informed her of the actual rental fair market value.

Because plaintiff has alleged claims upon which relief can be granted if proven true, the trial court improperly dismissed plaintiff's common law and silent fraud claims.

## E. NEGLIGENCE

Plaintiff also asserts that the trial court erred by dismissing her negligence-based causes of action. We agree. Defendants claim that plaintiff's negligence claims under the Occupational Code cannot be brought by a private cause of action. Defendants then claim that because there is no duty independent of the contract, a negligence claim cannot be maintained. However, as explained above, defendants' belief that private causes of action cannot be maintained for breaches of MCL 339.2912d is based on an erroneous reading of *Claire-Ann*. Further, "The threshold question in a negligence action is whether the defendant owed a duty to the plaintiff." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004). Here, MCL 339.2912d explicitly provides for statutory duties owed to plaintiff because of the Listing Agreement. Accordingly, plaintiff's negligence claims should not have been dismissed on a (C)(8) motion.

## F. PROFESSIONAL NEGLIGENCE

Plaintiff argues that the trial court erred by dismissing her professional negligence claims. We disagree. At issue is whether Michigan law would recognize a claim of professional malpractice against real estate brokers and salespersons. When the Supreme Court first considered the issue of professional negligence, it had to decide whether nurses were covered by the shortened two-year statute of limitations under the Revised Judicature Act, MCL 600.101 *et seq.*, or the general three-year statute of limitations, and it concluded that because nurses did not train as much as doctors did, they were not entitled to the benefit of the shortened malpractice

statute of limitations. *Kambas v St Joseph's Mercy Hosp of Detroit*, 389 Mich 249, 254-256; 205 NW2d 431 (1973).

The issue arose again in the context of attorney malpractice and our Supreme Court determined that attorneys were subject to the two-year statute of limitations but did not decide whether any other professional groups were also subject to it. *Sam v Balardo*, 411 Mich 405, 416; 308 NW2d 142 (1981). However, the Court determined that "the definition of malpractice and liability therefore are to be determined by resort to the common law." *Id.* at 424.

Subsequently, the Court determined that funeral home directors were not subject to the malpractice statute because malpractice against funeral homes and funeral directors was not recognized at common law. *Dennis v Robbins Funeral Home*, 428 Mich 698, 702; 411 NW2d 156 (1987). This Court then considered the issue with respect to engineers and determined that there likely[4] was no common law malpractice claim against engineers. *Nat'l Sand, Inc v Nagel Constr, Inc*, 182 Mich App 327, 341; 451 NW2d 618 (1990).

Finally, in the most recent case, our Supreme Court determined that accountants were subject to the two-year malpractice statute of limitations. *Local 1064, RWDSU AFL-CIO v Ernst & Young*, 449 Mich 322, 332; 535 NW2d 187 (1995). In doing so, the Court noted that "while Michigan case law is certainly relevant to determining whether a particular profession is subject to malpractice under the common law, the traditional nature and origin of the common law make it clear that consideration of judicial decisions from other jurisdictions is not prohibited here." *Id.*, 449 Mich at 330. It continued, "[i]n the absence of a published opinion in this state, it is entirely appropriate and indeed necessary to look to the common law as represented by other states' decisions, hornbooks, treatises, and journals to discern the scope of common law malpractice." *Id.* at 332.

Plaintiff wishes this Court to look at other states' cases, while defendants cite *Coats v Uhlmann*, 87 Mich App 385; 274 NW2d 792 (1978) as dispositive. Both are in error. *Coats* is irrelevant to this discussion because it expressly held, "Since the buyers' suit is not for injuries to

---

[4] This Court in *Nat'l Sand, Inc.* noted that

> Our research leads us to believe that an action for malpractice against engineers was not recognized by the common law at the time of the passage of the JA and the RJA. Accordingly, under *Sam [v Balardo*, 411 Mich 405; 308 NW2d 142 (1981)], the two-year malpractice period of limitation would be inapplicable and it would be necessary to apply the three-year negligence period of limitation under [MCL 600.]5805(8). However, we are reluctant to reach such a determination where the issue was not addressed by the trial court or briefed by the parties. Since, if we were to apply the three-year period of limitation to this case, a remand would be necessary to determine when plaintiff's action accrued, our decision is without prejudice to [the defendant's] arguing that the common law did recognize a malpractice action against engineers sufficiently long ago to meet the *Sam* requirement. [*Id.*, 182 Mich App at 341.]

person or property, it is unnecessary to consider whether the claim is based on malpractice . . . ." *Id.* at 393. At the same time, all of plaintiff's cited cases from other jurisdictions are from the 1980s. None of them is relevant to the question of whether realtors were subject to malpractice at common law. Moreover, they are only permissible in the absence of a Michigan published opinion, *Local 1064*, 449 Mich at 332, and Michigan has a case that stands for the proposition that realtors were not considered subject to malpractice at common law.

In *Pennock v Fuller*, 41 Mich 153, 155; 2 NW 176 (1879), our Supreme Court held that real estate agencies were not professions for the purpose of a statute that permitted issuance of a capias against one guilty of misconduct or neglect in some professional employment. Plaintiff argues that this case is 136 years old, but that is precisely the point. Such an older case shows us that the common law did not consider there to be malpractice claims against real estate brokers or salespersons. Accordingly, the trial court properly dismissed plaintiff's claims of professional malpractice.

## G. SANCTIONS

Finally, plaintiff argues that the trial court erred when it failed to enter sanctions against defendants' counsel for filing a false praecipe. We agree. This Court reviews for clear error a trial court's decision whether to grant sanctions under MCR 2.114. *Schadewald v Brule*, 225 Mich App 26, 41; 570 NW2d 788 (1997). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen v Kitchen*, 465 Mich 654, 661-662, 641 NW2d 245 (2002).

MCR 2.114(D)(2) provides that an attorney's signature on a document is a certification by the attorney that "to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." Sanctions under MCR 2.114 are mandatory upon the finding that a document was signed in violation of the court rule. *Guerrero v Smith*, 280 Mich App 647, 678; 761 NW2d 723 (2008).

There is no question that the praecipe was false when it was signed, as defendants' attorney conceded that he did not contact plaintiff as opposing counsel before submitting the motion. Defendants submit that plaintiff was not prejudiced because she clearly opposed the motion. However, the court rules were not written to allow violations that could be rendered moot simply because the other party did not agree. Indeed, litigation is generally contentious and an attorney could violate the signature requirement of MCR 2.114 under almost any circumstances were we to accept such an argument.

Because defendants have conceded that they did not contact plaintiff before filing the motion, we remand this case to the trial court to impose an appropriate mandatory sanction, determined by the trial court at its discretion. MCR 2.114(E).

## III. CONCLUSION

We hold that the trial court properly dismissed plaintiff's claims of professional negligence, but otherwise erred by dismissing plaintiff's breach of fiduciary duty, breach of

contract, fraud, and negligence claims because plaintiff stated claims upon which relief can be granted if proven true. We reverse the trial court's grant of summary disposition as to these claims and remand for additional proceedings consistent with this opinion.

We also remand for imposition of sanctions against defendants' counsel for the filing of a false praecipe. We do not retain jurisdiction.

Plaintiff as the prevailing party may tax costs. MCR 7.219(A).


/s/ Jane M. Beckering
/s/ David H. Sawyer
/s/ Henry William Saad